**CITY OF NEWTON, Iowa, and John Deegan, As Assessor of Jasper County, Iowa, Appellees,**

v.

**BOARD OF REVIEW FOR JASPER COUNTY, Iowa; Wesley Retirement Services, Inc.; and Park Centre Apartments, Appellants.**

No. 94–281.

Supreme Court of Iowa.

May 24, 1995.

John E. Billingsley of Walker, Knopf & Billingsley, Newton, for appellant Bd. of Review.

John R. Mackaman of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellants Wesley Retirement Services, Inc. and Park Centre Apartments.

Ivan T. Webber of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellees.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

■ This is an appeal from a property tax assessment. The question is whether the district court erred when it concurred in the assessor's classification of a residential retirement community as "commercial." Finding no error, we affirm.

I. *Scope of Review.*

■ Appeals from tax assessment cases are triable in equity. Iowa Code § 441.39 (1993). Our review, therefore, would ordinarily be de novo. Iowa R.App.P. 4. Here, however, the parties have stipulated to the facts. Thus our review is really limited to the correction of error, if any, in the court's application of pertinent statutes.

II. *Background Facts and Proceedings.*

As noted, the facts are undisputed. The property in question is a multistory building containing sixty-three living units, occupied by older adults as their primary residence. The real estate is owned by appellant Wesley Retirement Services, Inc. (WRS). WRS is a nonprofit corporation which operates other adult retirement communities in central Iowa. The building is leased by appellant Park Centre Apartments. Park Centre is organized as a cooperative under the Multiple Housing Act, Iowa Code ch. 499A (1989).

The residents of Park Centre occupy their units pursuant to a residency agreement with WRS. The agreement provides that each resident "shall have an estate in the nature of an estate for the life of the Resident...." By executing the agreement, residents agree to pay WRS an entry fee ranging from $41,300 for the smallest apartment to $173,700 for the largest. A portion of the amount so paid, not exceeding fifty percent, may be

refunded upon the death of a resident according to a specified schedule. In addition to the entry fee, each resident pays a monthly charge ranging from $520 to $1500, depending on the size of the unit and number of occupants.

Effective January 1, 1993, the Jasper County assessor classified Park Centre as commercial for property tax purposes. WRS and Park Centre protested, claiming that—as a cooperative—the facility's proper designation was residential. They prevailed upon the Jasper County Board of Review to reverse the assessor's decision. The assessor and the City of Newton then sought review in the district court.

The district court reinstated the assessor's commercial designation. It concluded that, although organized as a cooperative, Park Centre is not owned or controlled by those who reside in the apartment units. Therefore, the court reasoned, the residential tax benefits authorized by Iowa Code section 499A.14 should not apply. This appeal by WRS and Park Centre followed.

### III. *Discussion.*

■ By statute and administrative regulation, taxable real property in Iowa must be assessed within one of six categories: agricultural, residential, commercial, industrial, utilities, or railroads. *Sperfslage v. Ames City Bd. of Review,* 480 N.W.2d 47, 48 (Iowa 1992) (citing Iowa Code §§ 428.24, 434.15 (1989); 701 Iowa Admin.Code 71.3(3), 71.1(4)–(6)). Land and structures primarily used or intended as places of business are classified "commercial." 701 Iowa Admin.Code 71.1(5). Pertinent to this controversy, the "commercial" classification also includes "hotels, motels, rest homes, structures consisting of three or more separate living quarters and any other buildings for human habitation that are used as a commercial venture...." *Id.* Consistent with this definition, properties specifically *excluded* from residential classification are "[b]uildings for human habitation that are used as commercial ventures, including ... structures containing three or more separate living quarters, other than condominiums...." 701 Iowa Admin.Code 71.1(4).

It is beyond dispute that Park Centre contains more than three separate living quarters. Given the fact that the residents merely "live there," however, appellants contend that the facility has been improperly characterized as a commercial venture. The term "commercial" is nowhere defined in the Code or administrative regulations except in reference to the type of facilities already described. We turn, then, to a consideration of the generally accepted meaning of the term.

■ The word "commercial" relates to or is connected with "trade and traffic or commerce in general." *Anderson v. Humble Oil & Refining Co.,* 226 Ga. 252, 252, 174 S.E.2d 415, 416 (1970) (quoting Black's Law Dictionary 336, 337 (rev. 4th ed. 1968)). It commonly includes the exchange of goods, production, or property of any kind. *State ex rel. Lake County v. Zupancic,* 62 Ohio St.3d 297, 301, 581 N.E.2d 1086, 1089 (1991). In order to be considered commercial, an endeavor must involve activity which a person would normally engage in for profit. *See Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1108–09 (5th Cir.1985) (distinguishing between *commercial* and *sovereign* enterprise); *Kaiser v. Western R/C Flyers, Inc.,* 239 Neb. 624, 629, 477 N.W.2d 557, 561 (1991) (profit motive distinguishes commercial enterprise from private recreational facility).

The rental of multiunit dwellings is generally regarded as an income or profit-oriented enterprise. *See Sperfslage,* 480 N.W.2d at 49; *see also Zupancic,* 62 Ohio St.3d at 301, 581 N.E.2d at 1089. We, like other jurisdictions, have recognized the commercial nature of apartment complexes and their resulting commercial classification for tax purposes. *Sperfslage,* 480 N.W.2d at 49; *see Snow v. City of Memphis,* 527 S.W.2d 55, 66 (Tenn. 1975).

■ Appellants argue that Park Centre's status as a cooperative distinguishes it from the customary commercial apartment complex. They concede that Park Centre's residents do not hold fee title to their dwelling units. But they note that their residency agreement provides that the document itself "shall be and constitute a certificate of ownership within the meaning of [section]

499A.11." Such "ownership," appellants argue, entitles the residents—and thus Park Centre—to the tax benefits of section 499A.14. That section provides:

> The real estate shall be taxed in the name of the co-operation, and each person *owning* an apartment or room shall pay that person's proportionate share of such tax, and each person *owning* an apartment as a residence and under the qualifications of the laws of the state of Iowa as such shall receive that person's proportionate homestead tax credit and each veteran of the military services of the United States identified as such under the laws of the state of Iowa or the United States shall receive as a credit that person's veterans tax benefit as prescribed by the laws of the state of Iowa.

Iowa Code § 499A.14 (emphasis added). The district court was not convinced by this argument, and neither are we.

A "cooperative" is generally defined as a multiunit dwelling in which each resident has (1) an interest in the entity owning the building, and (2) a lease entitling the member to occupy a particular apartment within the building. 15A Am.Jur.2d *Condominiums and Co–Operative Apartments* § 59 (1976); *Sanders v. Tropicana*, 31 N.C.App. 276, 280–81, 229 S.E.2d 304, 307–08 (1976). It is a vehicle for the common ownership of property, a means of enabling the occupants—as members of the cooperative—to own, manage, and operate the apartment without anyone profiting therefrom. 15A Am.Jur.2d *Condominiums and Co–Operative Apartments* § 62.

It is apparent from the stipulated record before us that the residents of Park Centre, although entitled to occupy units within the apartment complex, have no more ownership interest in the cooperative than an ordinary tenant. The residents lack any control over the affairs of Park Centre. Park Centre, for that matter, operates as no more than an arm of WRS. The residents' entry fee and monthly payments go to WRS. All expenses for building maintenance are paid by WRS. Park Centre has no employees. All necessary services for Park Centre residents are performed by WRS employees. Moreover, the financial statement for WRS includes Park Centre in the corporation's capital and long-term debt structure.

Like the district court, we are not convinced that the so-called "certificate of ownership" provision of the residency agreement gives the residents any true ownership interest in Park Centre. Appellants' bare assertion of such a claim is insufficient to transform a mere tenancy to cooperative ownership meriting preferential property tax treatment. Park Centre may be legally organized as a cooperative under chapter 499A (1989). But the fact that the "members" of the cooperative have no rights to ownership or management of the enterprise clearly defeats the purpose underlying section 499A.14's residential property tax benefit. As a result, Park Centre can make no legitimate claim to residential status for property tax purposes. It was correctly designated by the assessor—and the district court—as a commercial enterprise.

**AFFIRMED.**