APPEL, Justice.
In this case, the Iowa City Board of Review (Board) appeals from a district court ruling that ordered the Board to reclassify twenty-two multiunit apartment buildings as residential property for tax assessment purposes. Classification of the property as residential would require the Board to tax the property at residential *645 rather than commercial property tax rates. The Board appeals, contending Dolphin Residential Cooperative, Inc. (Dolphin) was not properly organized under Iowa Code chapter 499A. As a result, the Board argues that Dolphin fails the organizational test for residential cooperatives adopted by this court in Krupp Place 1 Co-op, Inc. v. Board of Review, 801 N.W.2d 9 (Iowa 2011). The Board argues that because Dolphin fails the organizational test, the subject property should remain classified as commercial for property tax purposes. For the reasons set forth below, we reverse the summary judgment entered in favor of Dolphin and remand for the district court to enter summary judgment in favor of the Board.
I. Background Facts and Proceedings.
Dolphin was created on December 22, 2011, when Dolphin caused to be filed articles of incorporation with the Iowa secretary of state seeking to organize as a multiple housing cooperative under Iowa Code chapter 499A. The articles of incorporation listed attorneys Laurie L. Dawley and Dennis J. McMenimen as organizers.[1] Both Dawley and McMenimen signed the articles of incorporation. Both Dawley and McMenimen are citizens of the state of Iowa and over the age of eighteen. The articles of incorporation named Vijay J. Bhatt, an out-of-state resident, as the sole initial member of the board of directors. A document entitled “Consent Resolutions of Directors,” listed Bhatt as president, vice president, treasurer, and secretary of the cooperative. The consent resolutions authorized and directed Dolphin to acquire property located at .2401 Highway 6 East in Iowa City, Iowa, which contained four hundred apartment units owned by Dolphin International, LLC (Dolphin International), and RBJ Management, Inc. (RBJ). Finally, the consent resolutions authorized Dolphin’s issuance of three hundred ninety-nine membership certificates to Dolphin International and one membership certificate to RBJ in exchange for their respective interests in the real estate.
On December 23, the Iowa secretary of state issued a document entitled “Acknowledgment of Document Filed,” acknowledging receipt of the articles of incorporation for Dolphin and confirming such articles were effective as of December 22, 2011. The secretary of state also directed the recording of the articles of incorporation with the Johnson County recorder. By two deeds recorded December 27, Dolphin acquired title to the subject real estate described above and commonly known as Dolphin Lake Point Enclave (the Enclave). These deeds were from Dolphin International, an Illinois limited liability company, and RBJ, an Illinois corporation. The Enclave is an apartment complex in Iowa City that consists of twenty-two buildings comprising four hundred residential apartment units. Thereafter, pursuant to Iowa Code section 499A.11 (2011) and as authorized by the board of directors, Dolphin issued four hundred certificates of membership, one for each apartment unit at the Enclave. Dolphin issued three hundred ninety-nine membership certificates to Dolphin International and one membership certificate to RBJ. Dolphin and Dolphin International then entered into a proprietary lease for Dolphin International’s three hundred ninety-nine apartment units, and RBJ did the same for its one apartment unit.
In January 2012, the Iowa City assessor classified the Enclave as commercial property. Based on the commercial classifica *646 tion for the Enclave, Dolphin’s real estate taxes for the 2012-2013 fiscal year for the property were $307,366. Dolphin challenged this classification with the Iowa City assessor asserting that because it was a multiple housing cooperative, organized under chapter 499A of the Iowa Code, the Enclave should have been classified as residential property under Iowa Code section 441.21(11). This Code section expressly classified as “ ‘residential property’ ... all land and buildings of multiple housing cooperatives organized under chapter 499A.” Iowa Code § 441.21(11) (emphasis omitted).
In a letter dated April 2, the Iowa City assessor refused to change the classification of the Enclave to residential. The reason given for the refusal was that Dolphin failed to satisfy the statutory requirements of Iowa Code chapter 499A, as interpreted by the Iowa Supreme Court in the Krupp case, in that it did not pass the organizational test. Dolphin was advised of its right to appeal the assessment classification to the Board, which it did.
By notice dated May 25, the Board notified Dolphin that its request to reclassify the Enclave had been denied. The Board found there was “[i]nsufficient evidence to prove that the petitioned property is not assessable, is exempt from taxes, or is misclassified.” Dolphin appealed the Board’s decision to the district court.
During the course of the appeal, the parties filed cross-motions for summary judgment on the classification issue, with each party resisting the opposing motion. Dolphin argued that it satisfied the organizational test adopted by this court in Krupp because Dawley and McMenimen, as organizers, satisfied the requirements outlined in section 499A.1(1): See Iowa Code § 499A.1(1). Additionally, Dolphin took the position that the Board’s rejection of its classification was an attempt to resurrect the “actual use” test this court rejected in Krupp. Finally, Dolphin argued that the majority-citizenship requirement contained in section 499A.1(1), as interpreted by the Board, would violate the dormant Commerce Clause of the United States Constitution.
The Board emphasized that Dolphin failed to meet the requirements set forth in Krupp because Dolphin was not properly organized under chapter 499A. The Board argued for a “meaningful organizational test.” Specifically, the Board contended that Dolphin failed to meet the statutory requirement of members “organizing themselves,” or the statutory requirement that two adult natural persons be organizers of the cooperative. The Board argued that the two purported organizers of Dolphin, Dawley and McMeni-men, were not members “organizing themselves,” as required by section 499A.1(1), as the two were not members of the Dolphin cooperative. Id. (emphasis added). According to the Board, Dawley and McMenimen cannot be considered proper organizers for purposes of[1] satisfying the requirements of section 499A.1(1). Rather, the Board insisted the proper organizers under section 499A.1(1) must be the two entities which ultimately obtained “Certificates of Membership” in Dolphin, Dolphin International and RBJ. These entities failed the statutory requirements of section 499A.1(1) as they are neither persons of full age, nor citizens of the state of Iowa. Additionally, the Board argued that before property owned by a cooperative is entitled to residential tax treatment, chapter 499A requires the cooperative have as many different members as it has residential units. Dolphin has only two members having proprietary interests in all of the cooperative units. Finally, the Board contended the dormant Commerce Clause is inapplicable to the facts of this case, as *647 apartment buildings are incapable of crossing state borders in commerce.
On May 29, 2013, after a hearing on the competing motions for summary judgment, the district court entered its ruling. Relying on the plain language of Iowa Code section 499A.1(1), the district court concluded section 499A.1(1) imposed no requirement that the organizers of a chapter 499A cooperative must also be members of the cooperative. It held Dawley and McMenimen satisfied the clear statutory requirements of section 499A.1(1) as they were natural persons of full age and were citizens of Iowa. The district court also rejected the Board’s argument that there must be a one-to-one, member-to-unit ratio for ownership of the units in the cooperative. The district court concluded Dolphin met the organizational test set forth in Krupp. Consequently, the district court did not reach the dormant Commerce Clause issue.
The'district court granted the summary judgment motion filed by Dolphin and denied the summary judgment motion filed by the Board. It ordered the Board to reclassify the subject property as residential property for tax assessment purposes as of the assessment date January 1, 2012. The Board appealed the ruling of the district court, and we retained the appeal.
II. Standard of Review.
Although ordinarily appeals from decisions of the local board of review are triable in equity, Iowa Code § 441.39, and our review is de novo, Iowa R.App. P. 6.907, because the district court adjudicated the issue on appeal by summary judgment, our review is for corrections of errors at law, Am. Legion, Hanford Post 5 v. Cedar Rapids Bd. of Review, 646 N.W.2d 433, 437 (Iowa 2002). Summary judgment is appropriate when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Iowa R. Civ. P. 1.981(3). In considering a motion for summary judgment that requires an interpretation of a statute, our review is for correction of legal error.[2] Jones v. Univ. of Iowa, 836 N.W.2d 127, 139 (Iowa 2013).
III. Discussion of Requirement of Organizers for Residential Cooperatives.
A. Introduction. This case involves the proper interpretation of Iowa’s statute regarding the creation of residential cooperatives. Residential cooperatives have been part of the legal scene for decades. See Richard Siegler & Herbert J. Cooper-Levy, Brief History of Cooperative Housing, in General Materials and Information on Cooperative Housing 1, 1-2 (Nat’l Ass’n of Hous. Coops. 1986) (noting that although the concept of housing cooperatives has been around for centuries, “[t]he period of greatest cooperative development ... occurred in the aftermath of World War II”). Traditionally, residential cooperatives are a vehicle designed to allow residents “to own, manage, and operate residential apartments without anyone profiting therefrom.” 15B Am. Jur. 2d Condominiums and Cooperative Apartments § 59, at 637 (2011); see City of Newton v. Bd. of Review, 532 N.W.2d 771, 774 (Iowa 1995), overruled on other grounds by Krupp, 801 N.W.2d at 13 n. 1, 15. In many jurisdictions, including Iowa, residential cooperatives may receive favorable tax treatment. See generally Iowa *648 Code § 441.21(9) (directing the director of revenue to certify annually to each county auditor the percentages of the actual value at which agricultural, residential, commercial, industrial, railroad, and utility properties are to be assessed for property taxes). The notion is that while the traditional apartment building with a landlord owner and renting tenants should be considered a commercial enterprise, and taxed accordingly, a residential cooperative should be treated as residential property and subject to the lower tax rates ordinarily afforded to homeowners.
Since 1947, Iowa has had a statutory framework providing for the formation of residential cooperatives that are eligible to receive favorable tax treatment. See 1947 Iowa Acts ch. 250, § 1 (codified at Iowa Code § 499A.1 (1950)). This ease raises a series of questions of statutory issues under the Iowa statute.
B. Statutory Framework for Organization of Cooperatives. Cooperative associations are not a stranger to the Iowa Code. Iowa Code chapters 497 through 499A relate to various types of cooperatives. Each chapter has provisions related to formation of the cooperative.
Iowa Code chapter 497 relates to cooperatives for “agricultural, dairy, ethanol production, mercantile, mining, manufacturing, or mechanical business” purposes. Iowa Code § 497.1 (2011). Under this chapter, “Any number of persons, not less than five, may associate themselves as a cooperative association.” Id. (emphasis added). The next provision states, “They shall sign and acknowledge written articles” which are filed with the secretary of state. Id. § 497.2 (emphasis added).
Iowa Code chapter 498 relates to nonprofit cooperative associations. Iowa Code section 498.2 provides that “[a]ny number of persons, not less than five, may associate themselves as a cooperative association ... for the purpose of conducting any agricultural, livestock, horticultural!;, etc.] business.” Id. §§ 498.2-.3 (emphasis added). As with Iowa Code chapter 497, the Code provisions that follow provide that “[t ]hey shall sign and acknowledge written articles,” id. § 494.4 (emphasis added), and that such articles “shall be filed with the secretary of state,” id. § 498.5.
Iowa Code chapter 499 has similar provisions. Under Iowa Code section 499.5(1), “Five or more individuals, or two or more associations, may organize an association.” (Emphasis added.) The next statutory provision provides, however, that “[a]ll individual incorporators of agricultural associations must be engaged in producing agricultural products.... ” Id. § 499.5(2).
That brings us to the statutory provisions implicated in this lawsuit. Under Iowa Code section 499A.1(1), “Any two or more persons of full age, a majority of whom are citizens of the state, may organize themselves for the following or similar purposes: Ownership of residential, business property on a cooperative basis.” (Emphasis added.)[3]
*649 Under Iowa Code section 499A.1(1), the organizers are required to “adopt, and sign and acknowledge the articles of incorporation” of the residential cooperative. The articles of incorporation adopted by the organizers must state, among other things, the names of the directors for the first year and the number of directors. Id.
Once the articles of incorporation have been filed with the secretary of state with the required filing and recording fees, “a certificate of incorporation as a cooperative not for pecuniary profit” is issued. Id. The Code further provides that “[u]pon filing such articles the persons signing and acknowledging the same [the organizers] and their associates and successors shall become a body corporate” with various enumerated powers. Id. § 499A.2(1)-(10).
C. Iowa Caselaw Regarding Residential Cooperatives. We have had few occasions to consider the statutory provisions related to the formation of residential cooperatives under Iowa Code chapter 499A. There are two cases, however, in which we considered important issues related to the chapter that set the stage for our consideration of the issues in this case.
The first case is City of Newton. The central issue in City of Newton was whether a multistory building containing sixty-three living units was properly assessed as commercial property. 532 N.W.2d at 772-73. We recognized the rental of multiunit dwellings is ordinarily recognized as a profit-oriented enterprise and thus subject to commercial classification for tax purposes. Id. at 773. The question in City of Newton was whether the cooperative status of Park Centre Apartments, the leasee of the building, entitled the residents, and thus Park Centre, to the tax benefits of then Iowa Code section 499A.14. Id. at 773-74. We noted the residents in Park Centre did not actually own their apartment units. Id. at 774. Although the residents were entitled to occupy their unit, they had “no more ownership interest in the cooperative than an ordinary tenant.” Id. Further, the residents of Park Centre lacked any control over the affairs of the cooperative. Id. We concluded that under the then existing statute, “the fact that the ‘members’ of the cooperative [had] no rights to ownership or management of the enterprise clearly defeats the purpose underlying section 499A.14.” Id.
However, as the City of Newton ease was pending, the legislative wheels were turning. Prior to handing down the City of Newton decision, the legislature amended Iowa Code section 441.21 to provide that “[b]egmning with valuations established on or after January 1, 1995, ... ‘residential property’ includes all land and building of multiple housing cooperatives organized under chapter 499A.” 1995 Iowa Acts ch. 157, § 1 (currently codified at Iowa Code § 441.21(11)).
We next considered an appeal of a district court decision that two multiunit apartment buildings were entitled to favorable tax treatment as residential cooperatives in Krupp. In Krupp, the residential cooperatives had only two members, Larry and Connie Krupp. 801 N.W.2d at 11. Although as the only two members of the cooperatives they had ownership interests in the cooperatives, they did not reside in the buildings. Id. at 11. Instead, they subleased the units they owned to subtenants. Id. The district court found that the *650 cooperatives were entitled to favorable residential tax treatment, as “the cooperatives had followed all proper corporate formalities.” Id. at 13. The board of review appealed and the court of appeals affirmed the district court. Id. We granted further review. Id.
On appeal, the board conceded the cooperatives were properly organized under Iowa Code chapter 499A. Id. at 14. The board, however, asked us to look beyond the filing papers and consider the actual operation of the property. Id. Based on our review of the relevant statutes, we rejected an actual use test. Id. at 15. In particular, we noted the legislative history and language in Iowa Code section 441.21(11) imposes only an “organizational test” with no reference to a property’s actual use. Id. By adopting an organizational test, we noted the legislature avoided a fact-intensive actual use test. Id. at 16. We observed, among other things, that nothing in the current statutes required member residency to be entitled to favorable tax treatment. M.at 15-16.
We further declined the board’s invitation in Krupp to “pierce, the corporate veil.” Id. at 16. We noted that “the doctrine of piercing the corporate veil is a limited one that is employed only on behalf of creditors to reach the personal assets of shareholders of corporations.” Id. In any event, we held there was no evidence in the record that the cooperatives were operating for a profit and even if there had been such evidence, there was nothing in chapter 499A that prevented “a member from leasing out a unit or units with desirable economic terms.” Id. •
D. Validity of Organization of Dolphin by Attorneys Dawley and McMenimen. The first issue raised by the Board in this case is that attorneys Dawley and McMenimen were not lawful organizers of the residential cooperative. The Board recognizes that in Krupp we applied an organizational test rather than an actual use test with respect to determining proper tax treatment of a residential cooperative organized under Iowa Code chapter 499A. See id. at 15-16. The Board maintains, however, that although we adopted an organizational test in Krupp, any residential cooperative seeking favorable tax treatment must be properly organized under Iowa Code chapter 499A. According to the Board, because Dawley and McMenimen were not organizing themselves for purposes of “[o]wnership of residential, business property on a cooperative basis” as required by Iowa Code section 499A.1(1), Dolphin was not a properly organized residential cooperative and is not entitled to favorable tax treatment.
Dolphin responds that once the papers were filed and approved by the secretary of state, Dolphin came into existence as a residential cooperative and that is the end of the matter under the Krupp organizational test. See 801 N.W.2d at 15-16. It asserts that organizers may be “[a]ny two or more persons of full age, a majority of whom are citizens of the state” under Iowa Code section 499A.1(1) and that attorneys Dawley and McMenimen plainly qualify. Dolphin notes there is no requirement anywhere in Iowa Code section 499A.1 that organizers be “members” and that, indeed, at the time of the filing of articles of incorporation, there are no members.
A threshold question is whether Krupp precludes us from considering whether Dawley and McMenimen were qualified organizers of the residential cooperative. We conclude that it does not. In Krupp, the parties stipulated that the residential cooperative was properly organized under Iowa Code chapter 499A. Id. at 14. While Dolphin cites authority for the proposition that we are not bound by the parties’ stipulation of law, see Sanford’s Estate v. *651 Comm’r, 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20, 26 (1939), or fact, see Krupp, 801 N.W.2d at 13 n. 1, it is apparent from Krupp, that in that case, we did not consider the issue of proper organization at all, but focused only on the question of whether the subsequent operation of the residential cooperative had any impact on the availability of favorable tax treatment under Iowa Code section 441.21, see Krupp, 801 N.W.2d at 15-16. Thus, we think the Board may challenge whether Dolphin was properly organized at its inception.
We now turn to the merits of the Board’s argument. We begin our analysis with the language of the statute. There is no dispute that Dawley and McMenimen are persons of full age and that they are citizens of the state of Iowa. See Iowa Code § 499A.1(1). However, Iowa Code section 499A.1(1) requires more. They must “organize themselves” for “the following or similar purposes: [ojwnership of residential, business property on a cooperative basis.” Id. This language must be given meaning. See Neal v. Annett Holdings, Inc., 814 N.W.2d 512, 520 (Iowa 2012) (noting “each term [in a statute] is to be given effect, and we will not read a statute so that any provision will be rendered superfluous” (citation omitted) (internal quotation marks omitted)). The plain language suggests the organizers cannot organize others, but must organize themselves for purposes of ownership of residential property or a similar purpose. See State v. Royer, 632 N.W.2d 905, 908 (Iowa 2001) (noting statutory language is given its plain and ordinary meaning).
The notion that organizers are not just any person of full age who are citizens is supported not only by the direct language of Iowa Code section 499A.1(1), but also by the language in Iowa Code section 499A.2. This provision states, in relevant part: “Upon filing such articles the persons signing and acknowledging the same [the organizers] and their associates and successors shall become a body corporate with the name therein stated and shall have [enumerated powers].” Iowa Code § 499A.2.
Thus, from Iowa Code section 499A.2, it is clear that organizers, along with associates and successors, become the body corporate. This provision is consistent with an interpretation of Iowa Code section 499A.1(1) that the organizers must “organize themselves” for purposes of residential ownership. See Mall Real Estate, L.L.C. v. City of Hamburg, 818 N.W.2d 190, 198 (Iowa 2012) (noting statutes must be read in conjunction with other parts of chapter).
In addition, considered in context, it is clear that “organizers” are not merely professional facilitators. As noted above, the organizers cause the articles of incorporation to be filed with the secretary of state. Iowa Code § 499A.1(1). The organizers further name the directors for the first year. Id. The organizers thus have substantial power to direct the affairs of the residential cooperative during the first year through their drafting and appointment power. The initial directors have authority to promulgate bylaws, which in turn must provide for the “election of a president, vice president, treasurer, and secretary by the board of directors.” Id. § 499A.2A(2)(6). Indeed, in this case, the lawyer organizers appointed one person, Vijay Bhatt, as the sole member of the initial board of directors, and that one-person board then promulgated bylaws, pursuant to which the sole director named himself as president, vice president, treasurer, and secretary. It is thus entirely reasonable to require that organizers with such important powers should have a direct interest in the residential cooperative *652 itself rather than be a bystander with no direct interest in the enterprise.[4]
While Dolphin insists that its lawyers may be organizers even though they have no putative interest in the cooperative, the requirement of two organizers is inconsistent with that theory. If lawyers can be organizers under Iowa Code section 499A.1(1), why are two needed? Indeed, under Iowa Code section 498.2, “not less than five [persons] may associate themselves as a cooperative association.” Under Dolphin’s theory, five lawyers could band together to form the cooperative under Iowa Code section 498.2. Of course, having multiple persons form cooperatives who are interested in directly participating in the subsequent organization makes sense, because by definition cooperatives involve multiple ownership. It makes little sense, however, to require multiple lawyers to associate. together to merely accomplish incorporation formalities.
The facts of this case also illuminate the nature of the legal requirements for residential cooperatives. The record reveals that two entities, Dolphin International, an Illinois limited liability company, and RBJ, an Illinois corporation, are the owners of the Enclave, the apartment buildings in question. They understandably seek to convert their holdings into a residential cooperative in order to receive favorable tax treatment.
At the time of the attempted conversion, however, there were potential legal problems with Dolphin International and RBJ acting as organizers. First, the statute requires that the organizers be “persons of full age.” Id. § 499A.1(1). Although corporations are said to be a person within the meaning of the chapter, id. § 499A.1(1), one might wonder whether this general principle would be applied to organizers in light of the “full age requirement.” Ordinarily, corporations do not mature to “full age,” only living, breathing persons do. Second, even if corporate entities could be organizers, it was doubtful at all times relevant here that Dolphin International, a limited liability company, would qualify as an organizer. Arguably, the statute, which expressly authorized corporations to be persons but did not mention limited liability companies, impliedly rejected them as persons. See Kucera v. Baldazo, 745 N.W.2d 481, 487 (Iowa 2008) (discussing the rule of expressio uni-us est exclusio alterious); see also 2014 Iowa Acts ch. 1095, § 1, eff. July 1, 2014 (codified at Iowa Code § 499A.1(1) (2015)) (amending section 499A.1(1) to include a limited liability company as a person under the statute). A third potential legal problem was the statutory requirement that a majority of organizers under the statute be citizens of Iowa. While the citizenship requirement might be challenged under the dormant Commerce Clause, it is doubtful that Dolphin International or RBJ, organized in Illinois, could meet this statutory qualification. To avoid these legal pitfalls, Dolphin appears to have attempted to work around the statutory limitations in Iowa Code section 499A.1(1) (2011) by using attorneys Dawley and McMenimen as organizers. However, these lawyers were not organizing themselves for purposes of “[o]wnership of residential, business property on a cooperative basis.” Iowa Code § 499A.1(1).
*653 As a result, Dolphin was not properly established under Iowa Code section 499A.1(1). The district court therefore erred when it granted summary judgment to Dolphin and denied summary judgment to the Board. Because we conclude that Dolphin was not properly organized on this ground, we do not address the alternative arguments raised by the Board on this appeal.
IV. Challenge Under the Dormant Commerce Clause.
Dolphin asserts that the Board understands Iowa Code chapter 499A to impose a residency requirement, namely, that a majority of the initial members must be Iowa residents and that this provision violates the dormant Commerce Clause. Dolphin cites cases that stand for the general proposition that if a statute discriminates against interstate commerce, it may be constitutionally infirm. See Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578-79, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552, 559 (1986); Smithfield Foods, Inc. v. Miller, 367 F.3d 1061, 1064-65 (8th Cir.2004); S.D. Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 592-93 (8th Cir.2003). Dolphin urges us to avoid an interpretation that gives rise to potential constitutional infirmities. See Simmons v. State Pub. Defender, 791 N.W.2d 69, 88 (Iowa 2010).
We do not base our decision, however, on the citizenship provisions of Iowa Code section 499A.1(1) or any “residency requirement.” Cf. Jones v. Gale, 470 F.3d 1261, 1269 (8th Cir.2006) (finding prohibition of corporations from farming in Nebraska invalid when there was evidence of discriminatory intent against out-of-state corporations). Instead, we base our decision on our interpretation of the “organize themselves” provision of the statute. Iowa Code § 499A.1(1). While Dolphin in its briefing challenges any residency requirement as violating the commerce clause, our “organize themselves” interpretation does not require residency. In Krupp, we expressly stated there is no requirement that members occupy their units. 801 N.W.2d at 15-16. We have held, however, that organizers must have some skin in the game when they organize residential cooperatives. No party claims that such an interpretation runs afoul of the dormant Commerce Clause, and in any event, such a challenge does not discriminate against interstate commerce and would thus lack merit under dormant Commerce Clause analysis.
V. Conclusion.
For the foregoing reasons, we reverse the summary judgment entered in favor of plaintiff Dolphin and remand for the district court to enter summary judgment in favor of defendant the Board.
DISTRICT COURT DECISION REVERSED AND CASE REMANDED WITH INSTRUCTIONS.
All justices concur except MANSFIELD, J., who concurs specially, and ZAGER and WATERMAN, JJ., who dissent.

. Although the articles of incorporation list Dawley and McMenimen as incorporators, we assume the term "organizers” is meant. See Iowa Code § 499A.1(1) (2011).

. In this case, the standard of review elaborates upon, but is consistent with Krupp. See 801 N.W.2d at 13. In Krupp, we interpreted the statute and applied the standard of review for correction of errors at law. Id. at 13, 14-16. As stated here, this standard generally applies in reviewing rulings on motions for summary judgment.

. A number of other residential cooperative statutes require more than one person to organize the entity. For example, in Colorado, "Cooperative housing corporations may be formed by any three or more adult residents of [the] state associating themselves to form a cooperative or nonprofit corporation....” Colo.Rev.Stat. Ann. § 38-33.5-101 (West, Westlaw current through 70th G.A., 1st Reg. Sess., assorted chapters (2015)); see also Mo. Ann. Stat. § 357.015(2) (West, Westlaw current through 2015 1st Reg. Sess., 98th G.A.) ("Any number of persons, not less than five, may associate themselves together as a housing cooperative....”); N.J. Stat. Ann. § 46:7-9(1)(1) (West, Westlaw current through L. 2015, ch. 32) ("That it shall and may be lawful for any number of persons not less than five, to associate themselves into a company for the purpose of buying, selling, set *649 tling, owning and improving real estate ... upon making a certificate in writing under their hands and seals....”); N.C. Gen.Stat. Ann. § 54-111 (West, Westlaw current through 2015 Reg. Sess., ch. 1, 3-5) ("Any number of persons, not less than five, may associate themselves as a mutual association, society, company, or exchange, for the purpose of conducting any ... housing ... busi-ness_”).

. Dolphin attacks the Board’s position that organizers must be members of the residential cooperative because members are not admitted until after the residential cooperative has been formed by the filing of the articles of incorporation with the secretary of state. Dolphin's point may be well taken in the sense that organizers cannot be formal members until after the filing of the articles, but they can be putative members with an interest in organizing themselves into a cooperative at the time of filing.