MANSFIELD, Justice
(concurring specially).
I join in the majority opinion and write separately only because I would go farther. In my view, Krupp was wrongly decided and should be overruled. See Krupp Place 1 Co-op, Inc. v. Bd. of Review, 801 N.W.2d 9 (Iowa 2011).
Let’s begin with the underlying reality of what is going on: An Illinois-based commercial landlord is leasing out 400 apartment units in several buildings for profit. Seeking a fifty percent reduction in its property tax bill, that landlord has taken *654 on some of the trappings of an Iowa cooperative. , But none of the members of the cooperative actually resides in any of the apartment buildings. Rather, the so-called cooperative, Dolphin Residential Cooperative, Inc. (the Dolphin cooperative), has two “members” — Dolphin International, LLC, which has been assigned 399 of the apartments, and RBJ Management, Inc., which has been assigned the one remaining apartment. All three entities are under the direction of the same person— Vijay Bhatt. Bhatt is the sole director, president, vice president, treasurer, and secretary of the Dolphin cooperative, the manager of Dolphin International, and the president of RBJ.
As the majority opinion explains, two attorneys from the same Cedar Rapids law firm organized the Dolphin' cooperative. That law firm apparently represents all three entities — the Dolphin cooperative, Dolphin International, and RBJ. Once the Dolphin cooperative was formed, Dolphin International and RBJ deeded the real estate to it, which then turned around and leased the real estate back to Dolphin International and RBJ.
This commercial enterprise under the direction of a single person is totally different from what we would normally call a “cooperative.” The classic cooperative involves independent persons such as farmers forming a jointly owned entity in order to accomplish something as a group that no one person could do as effectively on his or her own (e.g., buy supplies, market grain, obtain electricity). See, e.g., Merriam-Webster’s Collegiate Dictionary 275 (11th ed.2003) (defining a cooperative as “an enterprise or organization owned by and operated for the benefit of those using its services”). Instead, we have here the opposite: a single economic enterprise purporting to be divided into independent units in order to get favorable tax treatment. The independent units exist on paper only, and none of the users of services have an ownership interest in the entity.
Does this underlying reality matter? I believe it does. There is a well-established doctrine in federal tax law that transactions undertaken only for tax purposes and otherwise lacking economic significance should be disregarded. As the United States Supreme Court has summed up,
This Court, almost 50 years ago, observed that taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed-the actual benefit for which the tax is paid. In a number of cases, the Court has refused to permit the transfer of formal legal title to shift the incidence of taxation attributable to ownership of property where the transferor continues to retain significant control over the property transferred. In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. The Court has never regarded the simple expedient of drawing up papers as controlling for tax purposes when the objective economic realities are to the contrary. In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding.
Frank Lyon Co. v. United States, 435 U.S. 561, 572-73, 98 S.Ct. 1291, 1298, 55 L.Ed.2d 550, 560 (1978) (citations omitted)(internal quotation marks omitted).
[W]here ... there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent- considerations, and is not shaped solely by tax-avoidance features that have meaning *655 less labels attached, the Government should honor the allocation of rights and duties effectuated by the parties.
Id. at 583-84, 98 S.Ct. at 1303-04, 55 L.Ed.2d at 567.
Frank Lyon involved a transaction that did have sufficient economic substance, according to the Supreme Court (although two justices dissented). Id. There, a state bank (Worthen) wanted to erect a multistory bank and office building but could not borrow the funds because of state and federal banking regulations. Id. at 563-64, 98 S.Ct. at 1293-94, 55 L.Ed.2d at 554-55. Worthen entered into a sale-and-leaseback arrangement with a separate company (Lyon), which in turn took out a mortgage. Id. at 564-68, 98 S.Ct. at 1293-96, 55 L.Ed.2d at 555-57. The Court found that this transaction had enough economic substance because “the lessor [Lyon] retain[ed] significant and genuine attributes of the traditional lessor status.” Id. at 584, 98 S.Ct. at 1304, 55 L.Ed.2d at 567.
It is true that Lyon’s majority shareholder also happened to serve on Worth-en’s board of directors. Id. at 563, 98 S.Ct. at 1293, 55 L.Ed.2d at 554. Yet there was no dispute as to “Lyon’s sub-stantiality and its independence from Worthen.” Id. at 582, 98 S.Ct. at 1303, 55 L.Ed.2d at 566 (footnote omitted). Nor was it disputed that Lyon had assumed significant risk and that both entities had valid nontax reasons for engaging in the transaction. Id. at 582-83, 98 S.Ct. at 1303, 55 L.Ed.2d at 566-67:
Here, by contrast, there are no genuine third parties. The putative cooperative, directed by Bhatt, consists of a 99.7% interest held by one Bhatt-directed entity and a .03% interest controlled by another Bhatt-directed entity. The three entities have been separated purely for tax reasons, and the ersatz cooperative has no reason for being other than tax reduction.[5]
The economic substance doctrine has been recognized by state courts. See TD Banknorth, N.A. v. Dep’t of Taxes, 185 Vt. 45, 967 A.2d 1148, 1157 (2008). In TD Banknorth, the taxpayer established three holding companies for the sole purpose of reducing Vermont tax liability. Id. at 1150-51. In holding that the companies should not be treated as separate for' tax purposes, the court emphasized both the taxpayer’s motivation and the holding companies’ lack of any independent business activity apart from holding certain assets for tax reasons. Id. at 1157-58; see also Shuwa Invs. Corp. v. County of Los Angeles, 1 Cal.App.4th 1635, 2 Cal.Rptr.2d 783, 784-86, 796 (1991) (finding that a stepped transaction intended to avoid property tax reassessment lacked economic substance and would be treated as a single sale); Comptroller of the Treasury v. SYL, Inc., 375 Md. 78, 825 A.2d 399, 415-16 (2003) (finding that subsidiary corporations were formed solely for tax purposes, lacked economic substance, and would be disregarded); Sherwin-Williams Co. v. Comm’r, 438 Mass. 71, 778 N.E.2d 504, 512 (2002) (“Massachusetts recognizes the ‘sham transaction doctrine’ that gives the commissioner the authority to disregard, for taxing purposes, transactions that have no economic substance or business purpose other than tax avoidance. The doctrine generally works to prevent taxpayers from claiming the tax benefits of transactions that, although within the language of the tax code, are not the type of transactions the law intended to favor with the benefit.” (Footnote omitted.) (Citation omitted.) (Internal quotation marks omitted.)).
*656 Our court has also followed substance-over-form in the field of taxation. For example, in Parshall Christian Order v. Board of Review, we upheld a county’s determination that a religious organization comprised of a single family was not entitled to a property tax exemption. See 315 N.W.2d 798, 805 (Iowa 1982). The facts of that case were as follows:
In December 1975, the Parshalls founded the Parshall Christian Order (PCO), a religious order dedicated to the advancement of biblical teachings. PCO consists of Robert Parshall, denominated as its chief steward, Joyce Pars-hall, assistant steward, and the two sons, who are referred to as members. No other person has been a member of PCO or applied for membership. Robert Parshall testified that new members would be welcome to join PCO if they were willing to abide by its rules and take the required oaths. Nothing in the record, however, suggests that PCO has made any effort to recruit additional members. The members of PCO are thus identical to the members of the Parshall family.
Id. at 799.
We explained our reasoning in this way:
Nothing in these definitions suggests that a religious society can consist solely of the members of a nuclear family. Inherent within those definitions is the notion that the various individuals composing a religious society have become associated only through their mutual desire for worship and religious education. Were it not for that desire the association of those particular individuals would not have occurred. Such is obviously not the case with PCO. The members of the Parshall family are not associated only because of their desire for mutual worship; they are associated as a family. They will continue as a group regardless of any religious beliefs they may possess. Because the predominant reason for the Parshalls’ association is not religious pursuit, we conclude that PCO is not a religious institution or society as contemplated by section 427.1(9) [now section 427.1(8) ].
Id. at 802. In summary, we said, “Granting tax exempt status to PCO would exalt form over substance_” Id. at 805.[6]
No detailed study of chapter 499A is needed to conclude that a purported cooperative arrangement which lacks economic substance does not fall within the purview of the chapter and should not qualify for the Iowa Code section 441.21(11) tax benefit. Section 499A.1(1) authorizes “[ojwnership of residential, business property on a cooperative basis.” Iowa Code § 499A.1(1) (2011) (emphasis added). If ownership is not, in reality, on a cooperative basis, the tax benefit does not accrue. Just as Iowa Code section 427.1(8) does not define “religious institution or society,” so too Iowa Code chapter 499A and section 441.21(11) do not define the term “cooperative.” But in the same way that taxing entities are entitled to look behind the labels to determine whether an entity is actually a religious institution, likewise they can examine whether the entity is, in practical terms, a cooperative. A de facto single-member cooperative has no more *657 validity for tax purposes than a religious order limited to one nuclear family. See Parshall Christian Order, 315 N.W.2d at 805.
Indeed, a hallmark feature of cooperatives is that they bring together multiple “persons.” See Iowa Code § 499A.1(1) (stating that “[a]ny two or more persons” may organize themselves to form a cooperative). But when, as here, the so-called cooperative lacks members who are economically distinct from each other, it is missing this essential feature.
Iowa Code section 499A.11 gives additional force to this point. It provides that
each member has an exclusive possesso-ry interest in an apartment unit and a possessory interest in common with all other members in that portion of the cooperative’s real and personal property not constituting apartment units, and which creates a legal relationship of landlord and tenant between the cooperative and member.
Id. § 499A.11. In addition, section 499A.18A makes each member “responsible for maintenance and repair of the person’s apartment unit.” Id. § 499A.18A. While I agree that it may be over-reading chapter 499A to hold that each member can only have an exclusive interest in one unit, and I do not believe chapter 499A prohibits members from subleasing their units, the section clearly contemplates that a cooperative would be comprised of multiple members who are economically independent of each other.
I acknowledge that Krwpp presented a similar situation: The only members of the purported cooperative were the Krupps— presumably a husband and wife — who together owned the entire twenty-four-unit apartment complex. 801 N.W.2d at 11. Hence, as in the present ease, there was a unitary economic entity that engaged in legal mitosis purely for tax reasons. As here, the transactions in Krupp lacked economic substance. Krupp, however, rejected the economic substance test in a footnote. Id. at 15 n. 2. For these reasons, I believe Krupp should be overruled.
Krupp gave considerable weight to language in Iowa Code section 441.21(11) which provides that “ ‘residential property ’ includes all land and buildings of multiple housing cooperatives organized under chapter 499A ....” Id. at 15 (second emphasis added) (quoting Iowa Code § 441.21(11) (2007)). In the court’s view, this language unambiguously established an “organizational test” as the only standard a cooperative must meet to receive preferred tax treatment. Id. It thus foreclosed any reliance on whether the so-called cooperative actually operated as a cooperative. Id.
While this is not an unreasonable interpretation of section 441.21(11), it does not persuade me. I think the phrase — “organized under chapter 499A” — was simply intended by the legislature to nail down the type of cooperative being referred to. I am not convinced that by using this rather plain vanilla phrase “organized under,” which appears in hundreds of Iowa statutes, the legislature specifically meant to establish a limited “organizational test” as the entire test for whether a cooperative qualified for residential tax treatment. To put it another way, I view the phrase “organized under” as being a floor, i.e., the cooperative -had to have been organized under chapter 499A, rather than a ceiling, i.e., the cooperative would always get the tax benefit as long as it was organized under chapter 499A.
To bolster its conclusion, the Krupp court suggested that when the legislature enacted section 441.21(11) in 1995, see 1995 Iowa Acts ch. 157, § 1, it may have been weighing in on a controversy raised by the *658 then-pending case of City of Newton v. Board of Review, 532 N.W.2d 771 (Iowa 1995), overruled on other grounds by Krupp, 801 N.W.2d at 13 n. 1. See Krupp, 801 N.W.2d at 16. City of Newton involved a retirement home that was owned by one entity (WRS) and leased by it to another entity (Park Centre, the purported cooperative). 532 N.W.2d at 772. The residents of the retirement home had entered into agreements with WRS that provided them with life estates. Id. at 772-73. However, in rejecting Park Centre’s request for residential tax treatment as a cooperative, we indicated that one should look at “the purpose underlying” the tax benefit. Id. at 774. The members of this cooperative had “no rights to ownership or management of the enterprise.” Id.
While City of Newton was pending but before it was decided, the legislature enacted what is now Iowa Code section 441.21(11). See 1995 Iowa Acts ch. 157, § 1. If the legislature was weighing in, it is important to note the legislature effectively ruled against Park Centre; that entity would have lost the case under section 441.21(11) just as surely as it lost under the reasoning of City of Newton. That is because the legislation required the cooperative to own the land and buildings — i.e., “all land and buildings of multiple housing cooperatives” — which Park Centre didn’t do. Thus, the legislation would have enabled the questionable Park Centre-type of cooperative to be nipped in the bud.
To read this legislation as undermining the ensuing City of Newton decision seems misguided to me. In all likelihood, if we believed our City of Newton decision was a dead end due to the recent enactment of section 441.21(11), we would have said so in City of Newton. We did not.
Hence, I read the phrase “organized under chapter 499A” in section 441.21(11) not as drawing a technical distinction between how a cooperative was initially organized and how it operates, but simply as importing chapter 499A’s overall requirements into section 441.21(11). Another important point is that the legislature said “organized under chapter 499A,” not “organized under section 499A.1.” This certainly implies that sections other than 499A.1, the only section dealing with initial organization, are relevant to the inquiry.
Additionally, as the debate between the majority and the dissent in this case illustrates, it is difficult to draw a line between organization and operations. They blend into each other. Is a cooperative validly organized under section 499A.1(1) if there never was an intent to operate “on a cooperative basis” as provided in section 499A.1(1)? Organization and operations to me are two sides of the same coin.
In the dissent’s view, favorable tax treatment is simply a matter of getting some paperwork in order. Once the cooperative has been established with the usual boilerplate filings executed by two straw-person nominees, the organizational test has been met and everything else is irrelevant. That can’t be right. If the dissent were correct, the cooperative would never have to advance beyond its initial formation and would never have to have any members. It' could totally flaunt the other requirements of chapter 499A so long as the requirements of section 499A.1 were satisfied. After all, the dissent would say, the cooperative was “organized” properly and that is the only thing that matters. Everything else concerns operations.
Note that the dissent is consistent and would give the owner of the real estate favorable residential tax treatment even if the “cooperative’s plans fall through ..., it never builds residential units, and it never admits members to the cooperative.” With respect, I think the members of the general assembly would drop their jaws when considering this outcome. This *659 would mean an ordinary commercial developer could get a fifty percent tax break merely by filing technically compliant section 499A.1 paperwork — without ever following through on anything. The developer would not even have to pretend to establish a cooperative-type arrangement, as here. That is not what the general assembly intended.
Yet the dissent has a valid point.. Normally we allow new entities to be formed with the aid of organizers or incorporators who serve a largely ministerial role, before being quickly replaced. Doing it any other way is often impractical, because until the entity is up and running it may be unclear who is going to be involved with it. The irony is that under the majority’s view of the organizational test, it will be harder for bona fide cooperatives to qualify than for Potemkin cooperatives such as Dolphin. It is easier for a faux cooperative to organize itself, as the majority demands, than for a real one to do so.
In sum, I agree with the majority that the cooperative here fails even a limited organizational test. However, going beyond the majority, I would also hold that any such cooperative should be disregarded for tax purposes because it fails the economic substance test. Without doubt, this cooperative was set up only for tax reasons, and it lacks an essential attribute of a chapter 499A cooperative, namely, that its members be economically independent. For these reasons, I would reverse the summary judgment entered by the district court.[7]

. As noted, the tax benefits do not even accrue to Iowa residents.

. In Parshall Christian Order, we determined that the taxpayer was not a "religious institution or society” without reaching the question whether the taxpayer’s property was used solely for the purposes of a religious institution or society. See 315 N.W.2d at 801. Thus, we applied an economic substance test to the issue of whether the taxpayer was a particular type of entity, not needing to consider the uses served by that entity. Cf. Krupp, 801 N.W.2d at 15 (indicating that Iowa Code section 427.1(8)—unlike section 441.21(11)—expressly incorporates an actual use test).

. I recognize that stare decisis is a reason not to overrule Krupp. However, Krupp was decided only four years ago, and this is the first time we have been called upon to apply it. See 801 N.W.2d at 9. For reasons discussed above, I believe Krupp's rejection of an actual use test for cooperatives is not merely an incorrect reading of the statute, but also leads to an unworkable distinction between a cooperative’s organization and its operations.