# IN THE SUPREME COURT OF IOWA

No. 13–1031

Filed May 15, 2015

Amended July 21, 2015

**DOLPHIN RESIDENTIAL COOPERATIVE, INC.,**

Appellee,

vs.

**IOWA CITY BOARD OF REVIEW,**

Appellant.

---

Appeal from the Iowa District Court for Johnson County, Stephen B. Jackson, Jr., Judge.

The Iowa City Board of Review appeals from the decision of the district court, which ordered the Iowa City Board of Review to reclassify a multiunit apartment cooperative as residential for property tax purposes. **DISTRICT COURT DECISION REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Eric R. Goers, Assistant City Attorney, Iowa City, for appellant.

Dennis J. McMenimen and Dana L. Oxley of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

**APPEL, Justice**.

In this case, the Iowa City Board of Review (Board) appeals from a district court ruling that ordered the Board to reclassify twenty-two multiunit apartment buildings as residential property for tax assessment purposes. Classification of the property as residential would require the Board to tax the property at residential rather than commercial property tax rates. The Board appeals, contending Dolphin Residential Cooperative, Inc. (Dolphin) was not properly organized under Iowa Code chapter 499A. As a result, the Board argues that Dolphin fails the organizational test for residential cooperatives adopted by this court in *Krupp Place 1 Co-op, Inc. v. Board of Review*, 801 N.W.2d 9 (Iowa 2011). The Board argues that because Dolphin fails the organizational test, the subject property should remain classified as commercial for property tax purposes. For the reasons set forth below, we reverse the summary judgment entered in favor of Dolphin and remand for the district court to enter summary judgment in favor of the Board.

## I. Background Facts and Proceedings.

Dolphin was created on December 22, 2011, when Dolphin caused to be filed articles of incorporation with the Iowa secretary of state seeking to organize as a multiple housing cooperative under Iowa Code chapter 499A. The articles of incorporation listed attorneys Laurie L. Dawley and Dennis J. McMenimen as organizers.[1] Both Dawley and McMenimen signed the articles of incorporation. Both Dawley and McMenimen are citizens of the state of Iowa and over the age of eighteen. The articles of incorporation named Vijay J. Bhatt, an out-of-state

---

[1]Although the articles of incorporation list Dowley and McMenimen as incorporators, we assume the term "organizers" is meant. *See* Iowa Code § 499A.1(1) (2011).

resident, as the sole initial member of the board of directors. A document entitled "Consent Resolutions of Directors," listed Bhatt as president, vice president, treasurer, and secretary of the cooperative. The consent resolutions authorized and directed Dolphin to acquire property located at 2401 Highway 6 East in Iowa City, Iowa, which contained four hundred apartment units owned by Dolphin International, LLC (Dolphin International), and RBJ Management, Inc. (RBJ). Finally, the consent resolutions authorized Dolphin's issuance of three hundred ninety-nine membership certificates to Dolphin International and one membership certificate to RBJ in exchange for their respective interests in the real estate.

On December 23, the Iowa secretary of state issued a document entitled "Acknowledgment of Document Filed," acknowledging receipt of the articles of incorporation for Dolphin and confirming such articles were effective as of December 22, 2011. The secretary of state also directed the recording of the articles of incorporation with the Johnson County recorder. By two deeds recorded December 27, Dolphin acquired title to the subject real estate described above and commonly known as Dolphin Lake Point Enclave (the Enclave). These deeds were from Dolphin International, an Illinois limited liability company, and RBJ, an Illinois corporation. The Enclave is an apartment complex in Iowa City that consists of twenty-two buildings comprising four hundred residential apartment units. Thereafter, pursuant to Iowa Code section 499A.11 (2011) and as authorized by the board of directors, Dolphin issued four hundred certificates of membership, one for each apartment unit at the Enclave. Dolphin issued three hundred ninety-nine membership certificates to Dolphin International and one membership certificate to RBJ. Dolphin and Dolphin International then entered into a

proprietary lease for Dolphin International's three hundred ninety-nine apartment units, and RBJ did the same for its one apartment unit.

In January 2012, the Iowa City assessor classified the Enclave as commercial property. Based on the commercial classification for the Enclave, Dolphin's real estate taxes for the 2012–2013 fiscal year for the property were $307,366. Dolphin challenged this classification with the Iowa City assessor asserting that because it was a multiple housing cooperative, organized under chapter 499A of the Iowa Code, the Enclave should have been classified as residential property under Iowa Code section 441.21(11). This Code section expressly classified as " 'residential property' . . . all land and buildings of multiple housing cooperatives organized under chapter 499A." Iowa Code § 441.21(11) (emphasis omitted).

In a letter dated April 2, the Iowa City assessor refused to change the classification of the Enclave to residential. The reason given for the refusal was that Dolphin failed to satisfy the statutory requirements of Iowa Code chapter 499A, as interpreted by the Iowa Supreme Court in the *Krupp* case, in that it did not pass the organizational test. Dolphin was advised of its right to appeal the assessment classification to the Board, which it did.

By notice dated May 25, the Board notified Dolphin that its request to reclassify the Enclave had been denied. The Board found there was "[i]nsufficient evidence to prove that the petitioned property is not assessable, is exempt from taxes, or is misclassified." Dolphin appealed the Board's decision to the district court.

During the course of the appeal, the parties filed cross-motions for summary judgment on the classification issue, with each party resisting the opposing motion. Dolphin argued that it satisfied the organizational

test adopted by this court in *Krupp* because Dawley and McMenimen, as organizers, satisfied the requirements outlined in section 499A.1(1). *See* Iowa Code § 499A.1(1). Additionally, Dolphin took the position that the Board's rejection of its classification was an attempt to resurrect the "actual use" test this court rejected in *Krupp*. Finally, Dolphin argued that the majority-citizenship requirement contained in section 499A.1(1), as interpreted by the Board, would violate the dormant Commerce Clause of the United States Constitution.

The Board emphasized that Dolphin failed to meet the requirements set forth in *Krupp* because Dolphin was not properly organized under chapter 499A. The Board argued for a "meaningful organizational test." Specifically, the Board contended that Dolphin failed to meet the statutory requirement of members "organizing themselves," or the statutory requirement that two adult natural persons be organizers of the cooperative. The Board argued that the two purported organizers of Dolphin, Dawley and McMenimen, were not members "organizing *themselves*," as required by section 499A.1(1), as the two were not members of the Dolphin cooperative. *Id.* (emphasis added). According to the Board, Dawley and McMenimen cannot be considered proper organizers for purposes of satisfying the requirements of section 499A.1(1). Rather, the Board insisted the proper organizers under section 499A.1(1) must be the two entities which ultimately obtained "Certificates of Membership" in Dolphin, Dolphin International and RBJ. These entities failed the statutory requirements of section 499A.1(1) as they are neither persons of full age, nor citizens of the state of Iowa. Additionally, the Board argued that before property owned by a cooperative is entitled to residential tax treatment, chapter 499A requires the cooperative have as many different members as it has residential

units. Dolphin has only two members having proprietary interests in all of the cooperative units. Finally, the Board contended the dormant Commerce Clause is inapplicable to the facts of this case, as apartment buildings are incapable of crossing state borders in commerce.

On May 29, 2013, after a hearing on the competing motions for summary judgment, the district court entered its ruling. Relying on the plain language of Iowa Code section 499A.1(1), the district court concluded section 499A.1(1) imposed no requirement that the organizers of a chapter 499A cooperative must also be members of the cooperative. It held Dawley and McMenimen satisfied the clear statutory requirements of section 499A.1(1) as they were natural persons of full age and were citizens of Iowa. The district court also rejected the Board's argument that there must be a one-to-one, member-to-unit ratio for ownership of the units in the cooperative. The district court concluded Dolphin met the organizational test set forth in *Krupp*. Consequently, the district court did not reach the dormant Commerce Clause issue.

The district court granted the summary judgment motion filed by Dolphin and denied the summary judgment motion filed by the Board. It ordered the Board to reclassify the subject property as residential property for tax assessment purposes as of the assessment date January 1, 2012. The Board appealed the ruling of the district court, and we retained the appeal.

## II. Standard of Review.

Although ordinarily appeals from decisions of the local board of review are triable in equity, Iowa Code § 441.39, and our review is de novo, Iowa R. App. P. 6.907, because the district court adjudicated the issue on appeal by summary judgment, our review is for corrections of errors at law, *Am. Legion, Hanford Post 5 v. Cedar Rapids Bd. of Review,*

646 N.W.2d 433, 437 (Iowa 2002). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). In considering a motion for summary judgment that requires an interpretation of a statute, our review is for correction of legal error.[2] *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013).

**III. Discussion of Requirement of Organizers for Residential Cooperatives.**

**A. Introduction.** This case involves the proper interpretation of Iowa's statute regarding the creation of residential cooperatives. Residential cooperatives have been part of the legal scene for decades. *See* Richard Siegler & Herbert J. Cooper-Levy, *Brief History of Cooperative Housing, in* General Materials and Information on Cooperative Housing 1, 1–2 (Nat'l Ass'n of Hous. Coops. 1986) (noting that although the concept of housing cooperatives has been around for centuries, "[t]he period of greatest cooperative development . . . occurred in the aftermath of World War II"). Traditionally, residential cooperatives are a vehicle designed to allow residents "to own, manage, and operate residential apartments without anyone profiting therefrom." 15B Am. Jur. 2d *Condominiums and Cooperative Apartments* § 59, at 637 (2011); *see City of Newton v. Bd. of Review*, 532 N.W.2d 771, 774 (Iowa 1995), *overruled on other grounds by Krupp*, 801 N.W.2d at 13 n.1, 15. In many jurisdictions, including Iowa, residential cooperatives may receive favorable tax treatment. *See generally* Iowa Code § 441.21(9) (directing the director of revenue to certify annually to each county auditor the

---

[2]In this case, the standard of review elaborates upon, but is consistent with *Krupp*. *See* 801 N.W.2d at 13. In *Krupp*, we interpreted the statute and applied the standard of review for correction of errors at law. *Id.* at 13, 14–16. As stated here, this standard generally applies in reviewing rulings on motions for summary judgment.

percentages of the actual value at which agricultural, residential, commercial, industrial, railroad, and utility properties are to be assessed for property taxes). The notion is that while the traditional apartment building with a landlord owner and renting tenants should be considered a commercial enterprise, and taxed accordingly, a residential cooperative should be treated as residential property and subject to the lower tax rates ordinarily afforded to homeowners.

Since 1947, Iowa has had a statutory framework providing for the formation of residential cooperatives that are eligible to receive favorable tax treatment. *See* 1947 Iowa Acts ch. 250, § 1 (codified at Iowa Code § 499A.1 (1950)). This case raises a series of questions of statutory issues under the Iowa statute.

**B. Statutory Framework for Organization of Cooperatives.** Cooperative associations are not a stranger to the Iowa Code. Iowa Code chapters 497 through 499A relate to various types of cooperatives. Each chapter has provisions related to formation of the cooperative.

Iowa Code chapter 497 relates to cooperatives for "agricultural, dairy, ethanol production, mercantile, mining, manufacturing, or mechanical business" purposes. Iowa Code § 497.1 (2011). Under this chapter, "Any number of persons, not less than five, may *associate themselves* as a cooperative association." *Id.* (emphasis added). The next provision states, "*They* shall sign and acknowledge written articles" which are filed with the secretary of state. *Id.* § 497.2 (emphasis added).

Iowa Code chapter 498 relates to nonprofit cooperative associations. Iowa Code section 498.2 provides that "[a]ny number of persons, not less than five, may *associate themselves* as a cooperative association . . . for the purpose of conducting any agricultural, livestock, horticultural[, etc.] business." *Id.* §§ 498.2–.3 (emphasis added). As with

Iowa Code chapter 497, the Code provisions that follow provide that "[t]*hey* shall sign and acknowledge written articles," *id.* § 494.4 (emphasis added), and that such articles "shall be filed with the secretary of state," *id.* § 498.5.

Iowa Code chapter 499 has similar provisions. Under Iowa Code section 499.5(1), "Five or more individuals, or two or more associations, may *organize* an association." (Emphasis added.) The next statutory provision provides, however, that "[a]ll individual incorporators of agricultural associations must be engaged in producing agricultural products . . . ." *Id.* § 499.5(2).

That brings us to the statutory provisions implicated in this lawsuit. Under Iowa Code section 499A.1(1), "Any two or more persons of full age, a majority of whom are citizens of the state, may *organize themselves* for the following or similar purposes: Ownership of residential, business property on a cooperative basis." (Emphasis added.)[3]

Under Iowa Code section 499A.1(1), the organizers are required to "adopt, and sign and acknowledge the articles of incorporation" of the

---

[3]A number of other residential cooperative statutes require more than one person to organize the entity. For example, in Colorado, "Cooperative housing corporations may be formed by any three or more adult residents of [the] state associating themselves to form a cooperative or nonprofit corporation . . . ." Colo. Rev. Stat. Ann. § 38-33.5-101 (West, Westlaw current through 70th G.A., 1st Reg. Sess., assorted chapters (2015)); *see also* Mo. Ann. Stat. § 357.015(2) (West, Westlaw current through 2015 1st Reg. Sess., 98th G.A.) ("Any number of persons, not less than five, may associate themselves together as a housing cooperative . . . ."); N.J. Stat. Ann. § 46:7-9(1)(1) (West, Westlaw current through L. 2015, ch. 32) ("That it shall and may be lawful for any number of persons not less than five, to associate themselves into a company for the purpose of buying, selling, settling, owning and improving real estate . . . upon making a certificate in writing under their hands and seals . . . ."); N.C. Gen. Stat. Ann. § 54-111 (West, Westlaw current through 2015 Reg. Sess., ch. 1, 3–5) ("Any number of persons, not less than five, may associate themselves as a mutual association, society, company, or exchange, for the purpose of conducting any . . . housing . . . business . . . .").

residential cooperative. The articles of incorporation adopted by the organizers must state, among other things, the names of the directors for the first year and the number of directors. *Id.*

Once the articles of incorporation have been filed with the secretary of state with the required filing and recording fees, "a certificate of incorporation as a cooperative not for pecuniary profit" is issued. *Id.* The Code further provides that "[u]pon filing such articles the persons signing and acknowledging the same [the organizers] and their associates and successors shall become a body corporate" with various enumerated powers. *Id.* § 499A.2(1)–(10).

**C. Iowa Caselaw Regarding Residential Cooperatives.** We have had few occasions to consider the statutory provisions related to the formation of residential cooperatives under Iowa Code chapter 499A. There are two cases, however, in which we considered important issues related to the chapter that set the stage for our consideration of the issues in this case.

The first case is *City of Newton.* The central issue in *City of Newton* was whether a multistory building containing sixty-three living units was properly assessed as commercial property. 532 N.W.2d at 772–73. We recognized the rental of multiunit dwellings is ordinarily recognized as a profit-oriented enterprise and thus subject to commercial classification for tax purposes. *Id.* at 773. The question in *City of Newton* was whether the cooperative status of Park Centre Apartments, the leasee of the building, entitled the residents, and thus Park Centre, to the tax benefits of then Iowa Code section 499A.14. *Id.* at 773–74. We noted the residents in Park Centre did not actually own their apartment units. *Id.* at 774. Although the residents were entitled to occupy their unit, they had "no more ownership interest in the cooperative than an

ordinary tenant." *Id.* Further, the residents of Park Centre lacked any control over the affairs of the cooperative. *Id.* We concluded that under the then existing statute, "the fact that the 'members' of the cooperative [had] no rights to ownership or management of the enterprise clearly defeats the purpose underlying section 499A.14." *Id.*

However, as the *City of Newton* case was pending, the legislative wheels were turning. Prior to handing down the *City of Newton* decision, the legislature amended Iowa Code section 441.21 to provide that "[b]eginning with valuations established on or after January 1, 1995, . . . 'residential property' includes all land and building of multiple housing cooperatives organized under chapter 499A." 1995 Iowa Acts ch. 157, § 1 (currently codified at Iowa Code § 441.21(11)).

We next considered an appeal of a district court decision that two multiunit apartment buildings were entitled to favorable tax treatment as residential cooperatives in *Krupp.* In *Krupp,* the residential cooperatives had only two members, Larry and Connie Krupp. 801 N.W.2d at 11. Although as the only two members of the cooperatives they had ownership interests in the cooperatives, they did not reside in the buildings. *Id.* at 11. Instead, they subleased the units they owned to subtenants. *Id.* The district court found that the cooperatives were entitled to favorable residential tax treatment, as "the cooperatives had followed all proper corporate formalities." *Id.* at 13. The board of review appealed and the court of appeals affirmed the district court. *Id.* We granted further review. *Id.*

On appeal, the board conceded the cooperatives were properly organized under Iowa Code chapter 499A. *Id.* at 14. The board, however, asked us to look beyond the filing papers and consider the actual operation of the property. *Id.* Based on our review of the relevant

statutes, we rejected an actual use test. *Id.* at 15. In particular, we noted the legislative history and language in Iowa Code section 441.21(11) imposes only an "organizational test" with no reference to a property's actual use. *Id.* By adopting an organizational test, we noted the legislature avoided a fact-intensive actual use test. *Id.* at 16. We observed, among other things, that nothing in the current statutes required member residency to be entitled to favorable tax treatment. *Id.* at 15–16.

We further declined the board's invitation in *Krupp* to "pierce the corporate veil." *Id.* at 16. We noted that "the doctrine of piercing the corporate veil is a limited one that is employed only on behalf of creditors to reach the personal assets of shareholders of corporations." *Id.* In any event, we held there was no evidence in the record that the cooperatives were operating for a profit and even if there had been such evidence, there was nothing in chapter 499A that prevented "a member from leasing out a unit or units with desirable economic terms." *Id.*

**D. Validity of Organization of Dolphin by Attorneys Dawley and McMenimen.** The first issue raised by the Board in this case is that attorneys Dawley and McMenimen were not lawful organizers of the residential cooperative. The Board recognizes that in *Krupp* we applied an organizational test rather than an actual use test with respect to determining proper tax treatment of a residential cooperative organized under Iowa Code chapter 499A. *See id.* at 15–16. The Board maintains, however, that although we adopted an organizational test in *Krupp*, any residential cooperative seeking favorable tax treatment must be *properly* organized under Iowa Code chapter 499A. According to the Board, because Dawley and McMenimen were not *organizing themselves* for purposes of "[o]wnership of residential, business property on a

cooperative basis" as required by Iowa Code section 499A.1(1), Dolphin was not a properly organized residential cooperative and is not entitled to favorable tax treatment.

Dolphin responds that once the papers were filed and approved by the secretary of state, Dolphin came into existence as a residential cooperative and that is the end of the matter under the *Krupp* organizational test. *See* 801 N.W.2d at 15–16. It asserts that organizers may be "[a]ny two or more persons of full age, a majority of whom are citizens of the state" under Iowa Code section 499A.1(1) and that attorneys Dawley and McMenimen plainly qualify. Dolphin notes there is no requirement anywhere in Iowa Code section 499A.1 that organizers be "members" and that, indeed, at the time of the filing of articles of incorporation, there are no members.

A threshold question is whether *Krupp* precludes us from considering whether Dawley and McMenimen were qualified organizers of the residential cooperative. We conclude that it does not. In *Krupp*, the parties stipulated that the residential cooperative was properly organized under Iowa Code chapter 499A. *Id.* at 14. While Dolphin cites authority for the proposition that we are not bound by the parties' stipulation of law, *see Sanford's Estate v. Comm'r*, 308 U.S. 39, 51, 60 S. Ct. 51, 59, 84 L. Ed. 20, 26 (1939), or fact, *see Krupp*, 801 N.W.2d at 13 n.1, it is apparent from *Krupp,* that in that case, we did not consider the issue of proper organization at all, but focused only on the question of whether the subsequent operation of the residential cooperative had any impact on the availability of favorable tax treatment under Iowa Code section 441.21, *see Krupp*, 801 N.W.2d at 15–16. Thus, we think the Board may challenge whether Dolphin was properly organized at its inception.

We now turn to the merits of the Board's argument. We begin our analysis with the language of the statute. There is no dispute that Dawley and McMenimen are persons of full age and that they are citizens of the state of Iowa. *See* Iowa Code § 499A.1(1). However, Iowa Code section 499A.1(1) requires more. They must "organize themselves" for "the following or similar purposes: [o]wnership of residential, business property on a cooperative basis." *Id.* This language must be given meaning. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 520 (Iowa 2012) (noting "each term [in a statute] is to be given effect, and we will not read a statute so that any provision will be rendered superfluous" (citation omitted) (internal quotation marks omitted)). The plain language suggests the organizers cannot organize others, but must organize themselves for purposes of ownership of residential property or a similar purpose. *See State v. Royer*, 632 N.W.2d 905, 908 (Iowa 2001) (noting statutory language is given its plain and ordinary meaning).

The notion that organizers are not just any person of full age who are citizens is supported not only by the direct language of Iowa Code section 499A.1(1), but also by the language in Iowa Code section 499A.2. This provision states, in relevant part: "Upon filing such articles the persons signing and acknowledging the same [the organizers] and their associates and successors shall become a body corporate with the name therein stated and shall have [enumerated powers]." Iowa Code § 499A.2.

Thus, from Iowa Code section 499A.2, it is clear that organizers, along with associates and successors, become the body corporate. This provision is consistent with an interpretation of Iowa Code section 499A.1(1) that the organizers must "organize themselves" for purposes of residential ownership. *See Mall Real Estate, L.L.C. v. City of Hamburg,*

818 N.W.2d 190, 198 (Iowa 2012) (noting statutes must be read in conjunction with other parts of chapter).

In addition, considered in context, it is clear that "organizers" are not merely professional facilitators. As noted above, the organizers cause the articles of incorporation to be filed with the secretary of state. Iowa Code § 499A.1(1). The organizers further name the directors for the first year. *Id.* The organizers thus have substantial power to direct the affairs of the residential cooperative during the first year through their drafting and appointment power. The initial directors have authority to promulgate bylaws, which in turn must provide for the "election of a president, vice president, treasurer, and secretary by the board of directors." *Id.* § 499A.2A(2)(*b*). Indeed, in this case, the lawyer organizers appointed one person, Vijay Bhatt, as the sole member of the initial board of directors, and that one-person board then promulgated bylaws, pursuant to which the sole director named himself as president, vice president, treasurer, and secretary. It is thus entirely reasonable to require that organizers with such important powers should have a direct interest in the residential cooperative itself rather than be a bystander with no direct interest in the enterprise.[4]

While Dolphin insists that its lawyers may be organizers even though they have no putative interest in the cooperative, the requirement of two organizers is inconsistent with that theory. If lawyers can be organizers under Iowa Code section 499A.1(1), why are *two* needed?

---

[4]Dolphin attacks the Board's position that organizers must be members of the residential cooperative because members are not admitted until after the residential cooperative has been formed by the filing of the articles of incorporation with the secretary of state. Dolphin's point may be well taken in the sense that organizers cannot be formal members until after the filing of the articles, but they can be putative members with an interest in organizing themselves into a cooperative at the time of filing.

Indeed, under Iowa Code section 498.2, "not less than five [persons] may associate themselves as a cooperative association." Under Dolphin's theory, five lawyers could band together to form the cooperative under Iowa Code section 498.2. Of course, having multiple persons form cooperatives who are interested in directly participating in the subsequent organization makes sense, because by definition cooperatives involve multiple ownership. It makes little sense, however, to require multiple lawyers to associate together to merely accomplish incorporation formalities.

The facts of this case also illuminate the nature of the legal requirements for residential cooperatives. The record reveals that two entities, Dolphin International, an Illinois limited liability company, and RBJ, an Illinois corporation, are the owners of the Enclave, the apartment buildings in question. They understandably seek to convert their holdings into a residential cooperative in order to receive favorable tax treatment.

At the time of the attempted conversion, however, there were potential legal problems with Dolphin International and RBJ acting as organizers. First, the statute requires that the organizers be "persons of full age." *Id.* § 499A.1(1). Although corporations are said to be a person within the meaning of the chapter, *id.* § 499A.1(1), one might wonder whether this general principle would be applied to organizers in light of the "full age requirement." Ordinarily, corporations do not mature to "full age," only living, breathing persons do. Second, even if corporate entities could be organizers, it was doubtful at all times relevant here that Dolphin International, a limited liability company, would qualify as an organizer. Arguably, the statute, which expressly authorized corporations to be persons but did not mention limited liability

companies, impliedly rejected them as persons. *See Kucera v. Baldazo*, 745 N.W.2d 481, 487 (Iowa 2008) (discussing the rule of *expressio unius est exclusio alterious*); *see also* 2014 Iowa Acts ch. 1095, § 1, eff. July 1, 2014 (codified at Iowa Code § 499A.1(1) (2015)) (amending section 499A.1(1) to include a limited liability company as a person under the statute). A third potential legal problem was the statutory requirement that a majority of organizers under the statute be citizens of Iowa. While the citizenship requirement might be challenged under the dormant Commerce Clause, it is doubtful that Dolphin International or RBJ, organized in Illinois, could meet this statutory qualification. To avoid these legal pitfalls, Dolphin appears to have attempted to work around the statutory limitations in Iowa Code section 499A.1(1) (2011) by using attorneys Dawley and McMenimen as organizers. However, these lawyers were not organizing *themselves* for purposes of "[o]wnership of residential, business property on a cooperative basis." Iowa Code § 499A.1(1).

As a result, Dolphin was not properly established under Iowa Code section 499A.1(1). The district court therefore erred when it granted summary judgment to Dolphin and denied summary judgment to the Board. Because we conclude that Dolphin was not properly organized on this ground, we do not address the alternative arguments raised by the Board on this appeal.

**IV. Challenge Under the Dormant Commerce Clause.**

Dolphin asserts that the Board understands Iowa Code chapter 499A to impose a residency requirement, namely, that a majority of the initial members must be Iowa residents and that this provision violates the dormant Commerce Clause. Dolphin cites cases that stand for the general proposition that if a statute discriminates against interstate

commerce, it may be constitutionally infirm. *See Brown-Foreman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578–79, 106 S. Ct. 2080, 2084, 90 L. Ed. 2d 552, 559 (1986); *Smithfield Foods, Inc. v. Miller*, 367 F.3d 1061, 1064–65 (8th Cir. 2004); *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592–93 (8th Cir. 2003). Dolphin urges us to avoid an interpretation that gives rise to potential constitutional infirmities. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 88 (Iowa 2010).

We do not base our decision, however, on the citizenship provisions of Iowa Code section 499A.1(1) or any "residency requirement." *Cf. Jones v. Gale*, 470 F.3d 1261, 1269 (8th Cir. 2006) (finding prohibition of corporations from farming in Nebraska invalid when there was evidence of discriminatory intent against out-of-state corporations). Instead, we base our decision on our interpretation of the "organize themselves" provision of the statute. Iowa Code § 499A.1(1). While Dolphin in its briefing challenges any residency requirement as violating the commerce clause, our "organize themselves" interpretation does not require residency. In *Krupp*, we expressly stated there is no requirement that members occupy their units. 801 N.W.2d at 15–16. We have held, however, that organizers must have some skin in the game when they organize residential cooperatives. No party claims that such an interpretation runs afoul of the dormant Commerce Clause, and in any event, such a challenge does not discriminate against interstate commerce and would thus lack merit under dormant Commerce Clause analysis.

**V. Conclusion.**

For the foregoing reasons, we reverse the summary judgment entered in favor of plaintiff Dolphin and remand for the district court to enter summary judgment in favor of defendant the Board.

**DISTRICT COURT DECISION REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Mansfield, J., who concurs specially, and Zager and Waterman, JJ., who dissent.

**MANSFIELD, Justice (concurring specially).**

I join in the majority opinion and write separately only because I would go farther. In my view, *Krupp* was wrongly decided and should be overruled. *See Krupp Place 1 Co-op, Inc. v. Bd. of Review,* 801 N.W.2d 9 (Iowa 2011).

Let's begin with the underlying reality of what is going on: An Illinois-based commercial landlord is leasing out 400 apartment units in several buildings for profit. Seeking a fifty percent reduction in its property tax bill, that landlord has taken on some of the trappings of an Iowa cooperative. But none of the members of the cooperative actually resides in any of the apartment buildings. Rather, the so-called cooperative, Dolphin Residential Cooperative, Inc. (the Dolphin cooperative), has two "members"—Dolphin International, LLC, which has been assigned 399 of the apartments, and RBJ Management, Inc., which has been assigned the one remaining apartment. All three entities are under the direction of the same person—Vijay Bhatt. Bhatt is the sole director, president, vice president, treasurer, and secretary of the Dolphin cooperative, the manager of Dolphin International, and the president of RBJ.

As the majority opinion explains, two attorneys from the same Cedar Rapids law firm organized the Dolphin cooperative. That law firm apparently represents all three entities—the Dolphin cooperative, Dolphin International, and RBJ. Once the Dolphin cooperative was formed, Dolphin International and RBJ deeded the real estate to it, which then turned around and leased the real estate back to Dolphin International and RBJ.

This commercial enterprise under the direction of a single person is totally different from what we would normally call a "cooperative." The classic cooperative involves independent persons such as farmers forming a jointly owned entity in order to accomplish something as a group that no one person could do as effectively on his or her own (e.g., buy supplies, market grain, obtain electricity). *See, e.g., Merriam-Webster's Collegiate Dictionary* 275 (11th ed. 2003) (defining a cooperative as "an enterprise or organization owned by and operated for the benefit of those using its services"). Instead, we have here the opposite: a *single* economic enterprise purporting to be divided into independent units in order to get favorable tax treatment. The independent units exist on paper only, and none of the users of services have an ownership interest in the entity.

Does this underlying reality matter? I believe it does. There is a well-established doctrine in federal tax law that transactions undertaken only for tax purposes and otherwise lacking economic significance should be disregarded. As the United States Supreme Court has summed up,

> This Court, almost 50 years ago, observed that taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed-the actual benefit for which the tax is paid. In a number of cases, the Court has refused to permit the transfer of formal legal title to shift the incidence of taxation attributable to ownership of property where the transferor continues to retain significant control over the property transferred. In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. The Court has never regarded the simple expedient of drawing up papers as controlling for tax purposes when the objective economic realities are to the contrary. In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding.

*Frank Lyon Co. v. United States*, 435 U.S. 561, 572–73, 98 S. Ct. 1291, 1298, 55 L. Ed. 2d 550, 560 (1978) (citations omitted) (internal quotation marks omitted).

> [W]here . . . there is a genuine multiple-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached, the Government should honor the allocation of rights and duties effectuated by the parties.

*Id.* at 583–84, 98 S. Ct. at 1303–04, 55 L. Ed. 2d at 567.

*Frank Lyon* involved a transaction that *did* have sufficient economic substance, according to the Supreme Court (although two justices dissented). *Id.* There, a state bank (Worthen) wanted to erect a multistory bank and office building but could not borrow the funds because of state and federal banking regulations. *Id.* at 563–64, 98 S. Ct. at 1293–94, 55 L. Ed. 2d at 554–55. Worthen entered into a sale-and-leaseback arrangement with a separate company (Lyon), which in turn took out a mortgage. *Id.* at 564–68, 98 S. Ct. at 1293–96, 55 L. Ed. 2d at 555–57. The Court found that this transaction had enough economic substance because "the lessor [Lyon] retain[ed] significant and genuine attributes of the traditional lessor status." *Id.* at 584, 98 S. Ct. at 1304, 55 L. Ed. 2d at 567.

It is true that Lyon's majority shareholder also happened to serve on Worthen's board of directors. *Id.* at 563, 98 S. Ct. at 1293, 55 L. Ed. 2d at 554. Yet there was no dispute as to "Lyon's substantiality and its independence from Worthen." *Id.* at 582, 98 S. Ct. at 1303, 55 L. Ed. 2d at 566 (footnote omitted). Nor was it disputed that Lyon had assumed significant risk and that both entities had valid nontax reasons for

engaging in the transaction. *Id.* at 582–83, 98 S. Ct. at 1303, 55 L. Ed. 2d at 566–67.

Here, by contrast, there are no genuine third parties. The putative cooperative, directed by Bhatt, consists of a 99.7% interest held by one Bhatt-directed entity and a .03% interest controlled by another Bhatt-directed entity. The three entities have been separated purely for tax reasons, and the ersatz cooperative has no reason for being other than tax reduction.[5]

The economic substance doctrine has been recognized by state courts. *See TD Banknorth, N.A. v. Dep't of Taxes*, 967 A.2d 1148, 1157 (Vt. 2008). In *TD Banknorth*, the taxpayer established three holding companies for the sole purpose of reducing Vermont tax liability. *Id.* at 1150–51. In holding that the companies should not be treated as separate for tax purposes, the court emphasized both the taxpayer's motivation and the holding companies' lack of any independent business activity apart from holding certain assets for tax reasons. *Id.* at 1157–58; *see also Shuwa Invs. Corp. v. County of Los Angeles*, 2 Cal. Rptr. 2d 783, 784–86, 796 (Ct. App. 1991) (finding that a stepped transaction intended to avoid property tax reassessment lacked economic substance and would be treated as a single sale); *Comptroller of the Treasury v. SYL, Inc.*, 825 A.2d 399, 415–16 (Md. 2003) (finding that subsidiary corporations were formed solely for tax purposes, lacked economic substance, and would be disregarded); *Sherwin–Williams Co. v. Comm'r*, 778 N.E.2d 504, 512 (Mass. 2002) ("Massachusetts recognizes the 'sham transaction doctrine' that gives the commissioner the authority to disregard, for taxing purposes, transactions that have no economic

---

[5]As noted, the tax benefits do not even accrue to Iowa residents.

substance or business purpose other than tax avoidance. The doctrine generally works to prevent taxpayers from claiming the tax benefits of transactions that, although within the language of the tax code, are not the type of transactions the law intended to favor with the benefit." (Footnote omitted.) (Citation omitted.) (Internal quotation marks omitted.)).

Our court has also followed substance-over-form in the field of taxation. For example, in *Parshall Christian Order v. Board of Review,* we upheld a county's determination that a religious organization comprised of a single family was not entitled to a property tax exemption. *See* 315 N.W.2d 798, 805 (Iowa 1982). The facts of that case were as follows:

> In December 1975, the Parshalls founded the Parshall Christian Order (PCO), a religious order dedicated to the advancement of biblical teachings. PCO consists of Robert Parshall, denominated as its chief steward, Joyce Parshall, assistant steward, and the two sons, who are referred to as members. No other person has been a member of PCO or applied for membership. Robert Parshall testified that new members would be welcome to join PCO if they were willing to abide by its rules and take the required oaths. Nothing in the record, however, suggests that PCO has made any effort to recruit additional members. The members of PCO are thus identical to the members of the Parshall family.

*Id.* at 799.

We explained our reasoning in this way:

> Nothing in these definitions suggests that a religious society can consist solely of the members of a nuclear family. Inherent within those definitions is the notion that the various individuals composing a religious society have become associated only through their mutual desire for worship and religious education. Were it not for that desire the association of those particular individuals would not have occurred. Such is obviously not the case with PCO. The members of the Parshall family are not associated only because of their desire for mutual worship; they are associated as a family. They will continue as a group regardless of any religious beliefs they may possess. Because the predominant reason for the Parshalls'

association is not religious pursuit, we conclude that PCO is not a religious institution or society as contemplated by section 427.1(9) [now section 427.1(8)].

*Id.* at 802. In summary, we said, "Granting tax exempt status to PCO would exalt form over substance . . . ." *Id.* at 805.[6]

No detailed study of chapter 499A is needed to conclude that a purported cooperative arrangement which lacks economic substance does not fall within the purview of the chapter and should not qualify for the Iowa Code section 441.21(11) tax benefit. Section 499A.1(1) authorizes "[o]wnership of residential, business property on a *cooperative* basis." Iowa Code § 499A.1(1) (2011) (emphasis added). If ownership is not, in reality, on a cooperative basis, the tax benefit does not accrue. Just as Iowa Code section 427.1(8) does not define "religious institution or society," so too Iowa Code chapter 499A and section 441.21(11) do not define the term "cooperative." But in the same way that taxing entities are entitled to look behind the labels to determine whether an entity is actually a religious institution, likewise they can examine whether the entity is, in practical terms, a cooperative. A de facto single-member cooperative has no more validity for tax purposes than a religious order limited to one nuclear family. *See Parshall Christian Order*, 315 N.W.2d at 805.

Indeed, a hallmark feature of cooperatives is that they bring together multiple "persons." *See* Iowa Code § 499A.1(1) (stating that "[a]ny two or more persons" may organize themselves to form a

---

[6]In *Parshall Christian Order*, we determined that the taxpayer was not a "religious institution or society" without reaching the question whether the taxpayer's property was used solely for the purposes of a religious institution or society. *See* 315 N.W.2d at 801. Thus, we applied an economic substance test to the issue of whether the taxpayer was a particular type of entity, not needing to consider the uses served by that entity. *Cf. Krupp*, 801 N.W.2d at 15 (indicating that Iowa Code section 427.1(8)— unlike section 441.21(11)—expressly incorporates an actual use test).

cooperative). But when, as here, the so-called cooperative lacks members who are economically distinct from each other, it is missing this essential feature.

Iowa Code section 499A.11 gives additional force to this point. It provides that

> each member has an exclusive possessory interest in an apartment unit and a possessory interest in common with all other members in that portion of the cooperative's real and personal property not constituting apartment units, and which creates a legal relationship of landlord and tenant between the cooperative and member.

*Id.* § 499A.11. In addition, section 499A.18A makes each member "responsible for maintenance and repair of the person's apartment unit." *Id.* § 499A.18A. While I agree that it may be over-reading chapter 499A to hold that each member can only have an exclusive interest in *one* unit, and I do not believe chapter 499A prohibits members from subleasing their units, the section clearly contemplates that a cooperative would be comprised of multiple members who are economically independent of each other.

I acknowledge that *Krupp* presented a similar situation: The only members of the purported cooperative were the Krupps—presumably a husband and wife—who together owned the entire twenty-four-unit apartment complex. 801 N.W.2d at 11. Hence, as in the present case, there was a unitary economic entity that engaged in legal mitosis purely for tax reasons. As here, the transactions in *Krupp* lacked economic substance. *Krupp*, however, rejected the economic substance test in a footnote. *Id.* at 15 n.2. For these reasons, I believe *Krupp* should be overruled.

*Krupp* gave considerable weight to language in Iowa Code section 441.21(11) which provides that " '*residential property*' includes all land

and buildings of multiple housing cooperatives *organized under chapter 499A . . . .*" *Id.* at 15 (second emphasis added) (quoting Iowa Code § 441.21(11) (2007)). In the court's view, this language unambiguously established an "organizational test" as the only standard a cooperative must meet to receive preferred tax treatment. *Id.* It thus foreclosed any reliance on whether the so-called cooperative actually operated as a cooperative. *Id.*

While this is not an unreasonable interpretation of section 441.21(11), it does not persuade me. I think the phrase—"organized under chapter 499A"—was simply intended by the legislature to nail down the type of cooperative being referred to. I am not convinced that by using this rather plain vanilla phrase "organized under," which appears in hundreds of Iowa statutes, the legislature specifically meant to establish a limited "organizational test" as the entire test for whether a cooperative qualified for residential tax treatment. To put it another way, I view the phrase "organized under" as being a *floor*, i.e., the cooperative had to have been organized under chapter 499A, rather than a *ceiling*, i.e., the cooperative would always get the tax benefit as long as it was organized under chapter 499A.

To bolster its conclusion, the *Krupp* court suggested that when the legislature enacted section 441.21(11) in 1995, *see* 1995 Iowa Acts ch. 157, § 1, it may have been weighing in on a controversy raised by the then-pending case of *City of Newton v. Board of Review*, 532 N.W.2d 771 (Iowa 1995), *overruled on other grounds by Krupp*, 801 N.W.2d at 13 n.1. *See Krupp*, 801 N.W.2d at 16. *City of Newton* involved a retirement home that was owned by one entity (WRS) and leased by it to another entity (Park Centre, the purported cooperative). 532 N.W.2d at 772. The residents of the retirement home had entered into agreements with WRS

that provided them with life estates. *Id.* at 772–73. However, in rejecting Park Centre's request for residential tax treatment as a cooperative, we indicated that one should look at "the purpose underlying" the tax benefit. *Id.* at 774. The members of this cooperative had "no rights to ownership or management of the enterprise." *Id.*

While *City of Newton* was pending but before it was decided, the legislature enacted what is now Iowa Code section 441.21(11). *See* 1995 Iowa Acts ch. 157, § 1. If the legislature was weighing in, it is important to note the legislature effectively ruled against Park Centre; that entity would have lost the case under section 441.21(11) just as surely as it lost under the reasoning of *City of Newton.* That is because the legislation required the cooperative to own the land and buildings—i.e., "all land and buildings of multiple housing cooperatives"—which Park Centre didn't do. Thus, the legislation would have enabled the questionable Park Centre-type of cooperative to be nipped in the bud.

To read this legislation as undermining the ensuing *City of Newton* decision seems misguided to me. In all likelihood, if we believed our *City of Newton* decision was a dead end due to the recent enactment of section 441.21(11), we would have said so in *City of Newton.* We did not.

Hence, I read the phrase "organized under chapter 499A" in section 441.21(11) not as drawing a technical distinction between how a cooperative was initially organized and how it operates, but simply as importing chapter 499A's overall requirements into section 441.21(11). Another important point is that the legislature said "organized under chapter 499A," not "organized under section 499A.1." This certainly implies that sections other than 499A.1, the only section dealing with initial organization, are relevant to the inquiry.

Additionally, as the debate between the majority and the dissent in this case illustrates, it is difficult to draw a line between organization and operations. They blend into each other. Is a cooperative validly organized under section 499A.1(1) if there never was an intent to operate "on a cooperative basis" as provided in section 499A.1(1)? Organization and operations to me are two sides of the same coin.

In the dissent's view, favorable tax treatment is simply a matter of getting some paperwork in order. Once the cooperative has been established with the usual boilerplate filings executed by two strawperson nominees, the organizational test has been met and everything else is irrelevant. That can't be right. If the dissent were correct, the cooperative would never have to advance beyond its initial formation and would never have to have any members. It could totally flaunt the other requirements of chapter 499A so long as the requirements of section 499A.1 were satisfied. After all, the dissent would say, the cooperative was "organized" properly and that is the only thing that matters. Everything else concerns operations.

Note that the dissent is consistent and would give the owner of the real estate favorable residential tax treatment even if the "cooperative's plans fall through . . . , it never builds residential units, and it never admits members to the cooperative." With respect, I think the members of the general assembly would drop their jaws when considering this outcome. This would mean an ordinary commercial developer could get a fifty percent tax break merely by filing technically compliant section 499A.1 paperwork—without ever following through on anything. The developer would not even have to pretend to establish a cooperative-type arrangement, as here. That is not what the general assembly intended.

Yet the dissent has a valid point. Normally we allow new entities to be formed with the aid of organizers or incorporators who serve a largely ministerial role, before being quickly replaced. Doing it any other way is often impractical, because until the entity is up and running it may be unclear who is going to be involved with it. The irony is that under the majority's view of the organizational test, it will be harder for bona fide cooperatives to qualify than for Potemkin cooperatives such as Dolphin. It is easier for a faux cooperative to organize itself, as the majority demands, than for a real one to do so.

In sum, I agree with the majority that the cooperative here fails even a limited organizational test. However, going beyond the majority, I would also hold that any such cooperative should be disregarded for tax purposes because it fails the economic substance test. Without doubt, this cooperative was set up only for tax reasons, and it lacks an essential attribute of a chapter 499A cooperative, namely, that its members be economically independent. For these reasons, I would reverse the summary judgment entered by the district court.[7]

---

[7]I recognize that stare decisis is a reason not to overrule *Krupp.* However, *Krupp* was decided only four years ago, and this is the first time we have been called upon to apply it. *See* 801 N.W.2d at 9. For reasons discussed above, I believe *Krupp*'s rejection of an actual use test for cooperatives is not merely an incorrect reading of the statute, but also leads to an unworkable distinction between a cooperative's organization and its operations.

**ZAGER, Justice (dissenting).**

I respectfully dissent. In my opinion, Dawley and McMenimen were qualified to act as the organizers of Dolphin Residential Cooperative, Inc. (Dolphin) and satisfied the requirements of Iowa Code section 499A.1(1) (2011). Thus, Dolphin was properly organized under chapter 499A and is entitled to favorable tax treatment by virtue of its status as a residential cooperative. I would affirm the decision of the district court.

The statutory language the majority concentrates on is "organize themselves for the following or similar purposes: Ownership of residential, business property on a cooperative basis." Iowa Code § 499A.1(1). According to the majority, this language suggests the organizers cannot organize others, but instead must organize *themselves*. Thus, it concludes Dawley and McMenimen cannot serve as the organizers of Dolphin because they did not intend to have a future interest in the cooperative. In other words, the majority injects an intent requirement into our meaningful organizational test that has no basis in the statute or our caselaw. In effect, the majority's analysis imposes a new requirement that the organizers of a residential cooperative also form its initial membership base. In my opinion, these requirements are not supported by the plain and ordinary language of the statute and are further undermined by a broader examination of chapter 499A as a whole. Moreover, these requirements are wholly illogical and contrary to our decision in *Krupp Place 1 Co-op, Inc. v. Board of Review*, 801 N.W.2d 9 (Iowa 2011).

The plain language of the statute provides: "*Any* two or more persons of full age, a majority of whom are citizens of the state, may

organize themselves . . . ."  Iowa Code § 499A.1(1) (emphasis added).
*Webster's Third New International Dictionary* defines "any" as "one indifferently out of more than two : one or some indiscriminately of whatever kind."  *Webster's Third New International Dictionary* 97 (unabr. ed. 2002).  As we have previously noted, " 'A more comprehensive word than "any" could hardly be employed.  It means indiscriminate, or without limitation or restriction.' "  *Iowa-Ill. Gas & Elec. Co. v. City of Bettendorf*, 241 Iowa 358, 364, 41 N.W.2d 1, 4–5 (1950) (quoting *Commonwealth v. One 1939 Cadillac Sedan*, 45 A.2d 406, 409 (Pa. Super. Ct. 1946)).  Given the legislature's use of the broad term "any," I cannot conclude the statute requires inquiry into the intent of a cooperative's organizers.

Moreover, read in its entirety, chapter 499A clearly does not require the organizers of a residential cooperative to have any direct interest in the cooperative either at the time of its organization or at some point in the future.  *See Miller v. Marshall County*, 641 N.W.2d 742, 749 (Iowa 2002) ("We must read each provision of a statute together, without according undue importance to any single provision.").  Nor does the statute in any way contemplate the de facto member-organizer requirement now imposed by the majority.  Chapter 499A clearly distinguishes between organizers, directors, and members, establishing different roles for each.  The legislature's use of distinct terms to refer to different classes of persons who take part in the process of forming, operating, and participating in a chapter 499A cooperative manifests its intent that these participants serve different functions.  *See Miller*, 641 N.W.2d at 749 ("We assume the legislature intends different meanings when it uses different terms in different portions of a statute.").  The legislature also clearly demonstrated its ability to differentiate between

these participants and established different rights and duties for each distinct class. *See, e.g.*, Iowa Code §§ 499A.1(1) (establishing organizers' duty to "adopt, and sign and acknowledge the articles of incorporation"), .2A (establishing directors' duty to adopt initial bylaws), .3C (establishing members' right to vote), .19 (establishing members' right to elect directors). Had the legislature intended to require that the organizers of a residential cooperative possess an interest in a chapter 499A cooperative or that they ultimately become members of the cooperative, it could have stated as much as it has in other contexts. *See, e.g., id.* § 496C.6 ("One or more individuals having capacity to contract, *each of whom is licensed to practice in this state a profession which the professional corporation is to be authorized to practice*, may act as incorporators of a professional corporation." (Emphasis added.)); *id.* § 499.5(2) ("All individual incorporators of agricultural associations must be *engaged in producing agricultural products . . . .*" (Emphasis added.)). But nothing in chapter 499A requires the organizers of a residential cooperative to have any interest in the cooperative or to become members of the cooperative. We should not, under the pretext of construction, read these requirements into the statute. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014) ("Under the pretext of construction, we may not extend a statute, expand a statute, or change its meaning.").

Significantly, nothing in chapter 499A requires the organizers of a residential cooperative to continue with the organization in any capacity after they file the articles of incorporation with the secretary of state and the cooperative becomes a corporate body. Under the statute, organizers serve a largely administrative function. Iowa Code section 499A.1(1) defines the function of organizers:

> The organizers shall adopt, and sign and acknowledge the articles of incorporation, stating the name by which the cooperative shall be known, the location of its principle place of business, its business or objects, the number of directors to conduct the cooperative's business or objects, the names of the directors for the first year, the time of the cooperative's annual meeting, the time of the annual meeting of its directors, and the manner in which the articles may be amended.

Further, outside of section 499A.1(1), chapter 499A makes no further reference to the organizers whatsoever. *See* Iowa Code §§ 499A.2–.25.

The majority conflates the duties of a cooperative's organizers with those of its directors and, by extension, its members. The majority states, "It is thus entirely reasonable to require that organizers *with such important powers* should have a direct interest in the residential cooperative itself rather than be a bystander with no direct interest in the enterprise." (Emphasis added.) But are the administrative powers listed above all that important? More significantly, where has the legislature made this judgment in the statute? The answer, of course, is that it hasn't.

More fundamentally, under the statute once the cooperative comes into existence, its initial members need not, and perhaps cannot, be ascertained. Thus, it is illogical to read the statute as requiring that the organizers of a cooperative possess an interest in the cooperative, that members be organizers, or that all organizers become members. In fact, after the articles of incorporation are filed with the secretary of state, and *before* membership certificates are ever issued, Iowa Code section 499A.2 provides that the organization "shall become a body corporate" and "have power . . . [t]o purchase, take, receive, lease . . . , take by gift, devise or bequest, or otherwise acquire, and to own, hold, use and otherwise deal in and with any real or personal property or any interest therein." *Id.* § 499A.2(4). Section 499A.2A further provides that the initial bylaws of

the cooperative shall be adopted by the cooperative's board of directors. *Id.* § 499A.2A.  It also provides that "[p]rior to the admission of members to the cooperative, the power to alter, amend, or repeal the bylaws or adopt new bylaws is vested in the board of directors."  *Id.* § 499A.2A. These sections plainly contemplate a period in which a chapter 499A cooperative may have no members yet nevertheless legally operate.

Problematically, the majority's logic applies to *any* two or more individuals who decide to organize themselves as a cooperative, not just these attorney organizers.  The purpose of the cooperative may be to purchase undeveloped real estate, build an apartment complex on the real estate, and sell each of the residential units.  Perhaps the cooperative's plans fall through after acquiring the real estate, it never builds residential units, and it never admits members to the cooperative. Are we to conclude that the cooperative was not properly organized?  Is the cooperative not entitled to favorable tax treatment with respect to property acquired and held during that period simply because its plans were unsuccessful?  Maybe the organizers never intended to build the apartments, but instead intended to hold the real estate for investment purposes.  The point is, in determining whether the cooperative was properly organized, we wouldn't look back and make a judgment about the original motive and intent of the organizers.  Neither should we make an inquiry about the original motive and intent of the organizers as part of our meaningful organizational test here.

Finally, the majority's interpretation of the statute in essence requires that we revive the "actual use" test we explicitly rejected in *Krupp* only four years ago.  *See* 801 N.W.2d at 16 ("By enacting the amendment with an organizational test, the legislature avoided a fact intensive 'actual use' test . . . .").  Take the previous example of the

cooperative that has its building plans fall through after acquiring some undeveloped real estate. How would the majority decide whether that cooperative was properly organized under chapter 499A? It never got to the membership phase; thus, we can't compare its members to its organizers. The only way to determine whether the property it holds is entitled to favorable tax treatment is to look to its actual operation during the interim period and ask: Was it actively making plans to go forward with what looks like a cooperative? This is plainly inconsistent with *Krupp*, in which we held that "[t]he only fact finding required under [Iowa Code] section 441.21(11) is whether the property is owned by an entity organized under chapter 499A" and declined to look at the actual use of the property in classifying it for tax purposes. *Id.* at 15–16. In the future, courts will have to take a fact-intensive look behind the curtain and consider who the cooperative's organizers were, who its initial members were, who the members are now, what the organizers and initial members' intentions were, and how the cooperative is operating. This patently contradicts both the holding and spirit of *Krupp*.

The statute and our decision in *Krupp* plainly do not contemplate the requirement that an organizer have a direct interest in the cooperative or the de facto member-organizer requirement now imposed by the majority. Thus, in my opinion, Dawley and McMenimen were qualified to act as the organizers of the Dolphin cooperative. Further, Dawley and McMenimen satisfied the organizational requirements of section 499A.1(1). Section 499A.1(1) requires: 1) that there be "two or more persons of full age"; 2) a majority of those persons must be "citizens of the State"; 3) those persons must "adopt, and sign and acknowledge the articles of incorporation," which must contain specific information; and 4) those persons must follow delineated procedures in filing the

articles of incorporation with the secretary of state. *See* Iowa Code § 499A.1(1). Here, it is undisputed that Dawley and McMenimen are persons, there are two of them, and they are both over the age of eighteen. It is undisputed that they are both citizens of Iowa. It is undisputed that they adopted, signed, and acknowledged the articles of incorporation and that the articles contained the necessary information. It is undisputed that they filed the articles with the secretary of state on December 22, 2011, and that on December 23 the Iowa secretary of state issued a document entitled "Acknowledgment of Document Filed," confirming Dolphin's articles of incorporation were effective as of December 22. Consequently, Dawley and McMenimen clearly satisfy our meaningful organizational test. *See Krupp*, 801 N.W.2d at 15 ("[C]hapter 499A imposes only an 'organizational test,' with no reference to the property's actual use."). Dolphin was properly organized and is entitled to favorable tax treatment by virtue of its status as a residential cooperative.

There is no statutory or logical basis for inquiring into the motive or intent of the organizers of a cooperative, or for considering whether the organizers have some direct interest in the cooperative either at the time of its organization or at some point in the future. Neither is there any statutory or logical basis for the de facto member-organizer requirement now imposed by the majority. The majority's new requirements are not supported by the statute and are plainly inconsistent with our holding in *Krupp*. These considerations should have nothing to do with our analysis.

The elephant in the room is that the majority, and the local taxing authorities, don't like the loss of tax revenue resulting from the conversion of property from a commercial to a residential tax status. But

the impression that these property owners are somehow taking advantage of the law should not really be our concern. The legislature made the policy decision to tax residential cooperatives more favorably. If people are upset about this, they should make their concerns known to the legislature, which has the power to correct this perceived injustice. I don't believe it is for this court to arbitrarily adopt additional requirements not provided for in the statute to achieve this result. Dolphin was properly organized. I would affirm the decision of the district court.

Waterman, J., joins this dissent.