# IN THE SUPREME COURT OF IOWA

No. 22–1190

Submitted April 11, 2023—Filed May 5, 2023

**STORY COUNTY WIND, LLC,**

Appellant,

vs.

**STORY COUNTY BOARD OF REVIEW,**

Appellee.

---

Appeal from the Iowa District Court for Story County, Amy M. Moore, Judge.

A wind generation company appeals the district court's dismissal of the company's property tax appeal. **AFFIRMED.**

May, J., delivered the opinion of the court, in which all justices joined.

Brant D. Kahler (argued) and Cynthia Boyle Lande of Brown, Winick, Graves, Gross & Baskerville, P.L.C., Des Moines, for appellant.

Timothy C. Meals, County Attorney, and Ethan P. Anderson (argued) and Joshua A. Duden (argued), Assistant County Attorneys, for appellee.

**MAY, Justice.**

Iowa Code section 427B.26 (2021) creates a special system for valuing wind plants for property tax purposes. Story County Wind, LLC (SCW) contends that "repowering" a wind plant—replacing a substantial proportion of its parts— changes the valuation analysis under section 427B.26. The district court rejected this view, as do we. We affirm.

## I. Background.

Iowa Code section 427B.26 is entitled "Special valuation of wind energy conversion property." Here we consider the version of section 427B.26 that was effective from July 1, 1993, to June 30, 2021.[1] It states in part:

> 2. In lieu of the valuation and assessment provisions in [other Code sections], wind energy conversion property . . . shall be valued by the local assessor for property tax purposes as follows:
>
> *a.* For the first assessment year, at zero percent of the net acquisition cost.
>
> *b.* For the second through sixth assessment years, at a percent of the net acquisition cost which rate increases by five percentage points each assessment year.
>
> *c.* For the seventh and succeeding assessment years, at thirty percent of the net acquisition cost.
>
> . . . .
>
> 4. For purposes of this section:
>
> *a.* "*Net acquisition cost*" means the acquired cost of the property including all foundations and installation cost less any excess cost adjustment.

---

[1]Section 427B.26 was amended by the 2021 legislature, 2021 Iowa Acts ch. 80, §§ 269– 270 (codified at Iowa Code § 427B.26 (2022)), and again by the 2022 legislature, 2022 Iowa Acts ch. 1075, §§ 1–3 (to be codified at Iowa Code § 427B.26 (2023)). We discuss the 2022 amendments at the end of this opinion.

   *b.* "*Wind energy conversion property*" means the entire wind plant including, but not limited to, a wind charger, windmill, wind turbine, tower and electrical equipment, pad mount transformers, power lines, and substation.

*Id.*[2]

SCW owns and operates the "wind energy conversion property"—or wind plants[3]—at issue here. The plants were first placed in service in 2008. They were first assessed for property tax purposes in 2009. And so, 2009 was the plants' "first assessment year" under the statute's graduated valuation schedule. *Id.* § 427B.26(2)(*a*). During that year, the plants were valued at "zero percent of the net acquisition cost." *Id.* After that, their valuations gradually increased until 2015, the plants' "seventh . . . assessment year[]." *Id.* § 427B.26(2)(*c*). Since then, the plants have been valued "at thirty percent of the net acquisition cost." *Id.*

In 2019, a "repowering" project began for the wind plants. This project was aimed at replacing "old and obsolete blade and generator technology with new blade and generator technology." It included the replacement of gearboxes, blades, hubs, pitch systems, bearing and main shafts, and oil coolers. But the

---

[2]In the interest of brevity, we have not reproduced subsections (1) and (3) of Iowa Code section 427B.26. Subsection (1) concerns the methods by which cities and counties may opt in—and later opt out—of section 427B.26's special valuation system. *Id.* § 427B.26(1). Subsection (3) concerns the method for taxpayers to opt in to section 427B.26's special valuation system "in lieu of" taxation under other provisions. *Id.* § 427B.26(3).

[3]The record is not wholly clear about how we should describe SCW's property. SCW refers to its property as "wind tower parcels," but "parcels" are not mentioned in the statute. However, SCW also says that its "wind tower parcels" are correctly classified as "wind energy conversion property" under the statute. And the statute defines "wind energy conversion property" to mean "wind plant[s]." *Id.* § 427B.26(4)(*b*). So we use the term "wind plant."

project did not add any additional wind towers. And the project did "not involve changes to the transmission line, access roads, [or] tower foundations."[4]

Notwithstanding the repowering project, the Story County Assessor continued to value and assess the wind plants as before. In 2021, SCW filed a protest with the Story County Board of Review (Board). Specifically, SCW asked for the assessment to "be adjusted by (1) removing the original acquisition cost of [components replaced during the repowering] from the calculation; (2) adding the original acquisition cost of new components [added during the repowering] to the calculation; and (3) restarting the phased-in assessment percentages described in Iowa Code § 427B.26 for the new components."

The Board declined to modify the assessment. SCW then appealed to the district court. SCW and the Board filed cross-motions for summary judgment. The court denied SCW's motion and granted the Board's motion. SCW appeals.

## II. Standard of Review.

Usually, "appeals from decisions of the local board of review are triable in equity, Iowa Code § 441.39, and our review is de novo, Iowa R. App. P. 6.907." *Dolphin Residential Coop., Inc. v. Iowa City Bd. of Rev.*, 863 N.W.2d 644, 647 (Iowa 2015). But "because the district court adjudicated the issue on appeal by summary judgment, our review is for corrections of errors at law." *Id.* The district court should grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of

---

[4]The record gives conflicting signals about whether towers were replaced. There was also disagreement on this issue at oral argument. Because the matter comes to us following a grant of summary judgment against SCW, we accept SCW's position that towers were replaced.

law." Iowa R. Civ. P. 1.981(3). "In considering a motion for summary judgment that requires an interpretation of a statute, our review is for correction of legal error." *Dolphin Residential*, 863 N.W.2d at 647.

**III. Analysis.**

Generally speaking, property taxes are based on the "market value" of the assessed property. Iowa Code § 441.21(1)(*b*)(1). As noted, though, Iowa Code section 427B.26 creates a special system for valuing wind plants. Under this system, a wind plant's valuation depends upon its "net acquisition cost" and its tax age, that is, the number of years that the plant has been assessed. *Id.* § 427B.26(2). "For the first assessment year," a plant is valued "at zero percent of the net acquisition cost." *Id.* § 427B.26(2)(*a*). Its valuation then increases "by five percentage points each assessment year." *Id.* § 427B.26(2)(*b*). Ultimately, the plant's valuation caps out at "thirty percent of the net acquisition cost" for the "seventh and succeeding assessment years." *Id.* § 427B.26(2)(*c*).

Here we consider whether this scheme is altered by a "repowering," that is, a replacement of a substantial portion of a wind plant's parts. Is it true, as SCW suggests, that replaced parts should be placed on their own valuation schedule? And should that new schedule include a separate "first assessment year" for those replaced parts? *Id.* § 427B.26(2)(*a*). And should those replaced parts be valued at "zero percent" during their (separate) "first assessment year"— even if (as here) the wind plant as a whole is past its "seventh . . . assessment year" and, therefore, is valued at "thirty percent of the net acquisition cost"? *Id.* § 427B.26(2).

To answer these questions, we must study the text of the statute, "the words used by the legislature." *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996). We must determine "the fair and ordinary meaning" of those words. *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021). We must consider the statute as a whole, "not just isolated words and phrases." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

We have reviewed section 427B.26 as a whole. And we have found nothing that supports SCW's proposed separate-schedules-for-replacement-parts regime. The statute does not mention "repowerings" or any other part replacements. It does not contain the word "replacement" or any synonyms. And yet the word "replacement" appears in many *other* Iowa statutes. *E.g.*, Iowa Code § 6A.21(2); *id.* § 7E.5A(1); *id.* §§ 8A.311(16)(*c*), .365(1); *id.* § 8C.7A(1), (3); *id.* § 8D.13(8); *id.* §§ 15.293A(2)(*d*)–(*f*), .355(3)(*e*); *id.* § 15E.52(12); *id.* § 16.194(1), (4), (9). The phrase "replacement parts" appears in several statutes. *E.g.* Iowa Code § 8A.362(8); *id.* § 322F.1(7)(*m*); *id.* § 423D.1(1)(*d*); *id.* § 537B.4(2); *id.* § 555A.1(3)(*a*)(5). And the Iowa Code contains many related terms, like "maintenance," *id.* § 26.2(3)(*b*), (4), "modernization," *id.* § 135.61(17), "reconstruction," *id.* § 16.194A(1), "renovation," *id.* § 16.196(1)(*b*), "repair," *id.* § 26.2(3)(*b*), (4), "repair or replacement," *id.* § 89.7A(3), "replacement . . . equipment," *id.* § 8A.345, "replacement or modification of any existing equipment," *id.* § 103A.8(7), "replacement of existing structures," *id.* § 8C.7C(3), "replacement of . . . component parts," *id.* § 100D.1(7), and "replacement of . . . worn . . . parts," *id.* § 89A.1(1). If the legislature had intended for part

replacement projects to trigger special treatment under section 427B.26, we think that terms like these would appear in section 427B.26. But they don't.[5]

Instead, section 427B.26 provides just one special schedule. That schedule ties the valuation of "wind energy conversion property" to its tax age—its "assessment year"—and its "net acquisition cost." *Id.* § 427B.26(2). And section 427B.26 specifically defines "wind energy conversion property" to mean "*the entire wind plant.*" *Id.* § 427B.26(4)(*b*) (emphasis added). The whole thing. Like the Board, we read this to mean that valuation under section 427B.26 depends on the tax age and acquisition cost of an "entire wind plant"—the plant *as a whole.* It does not depend on the cost or age of replacement parts.

Here, it is undisputed that SCW's repowering project did not add or replace an "*entire* wind plant." *Id.* (emphasis added). No additional towers were added. And important portions of the existing plants—including their foundations—were not replaced. As a result, the repowering project did not impact the plants' valuation under section 427B.26.

We have considered all of SCW's counterarguments. To its credit, SCW concedes that the statute "does not expressly address repowers." But SCW contends that the statutory term "net acquisition cost" "encompasses repowers *and their* 'acquired cost,'" i.e., the cost of replacing components through a repowering. (Emphasis added.) We disagree. Section 427B.26 defines "net

---

[5]By way of conscious repetition, this opinion is focused on a specific version of section 427B.26 that was in effect from July 1, 1993 to June 30, 2021. As we discuss at the end of this opinion, the 2022 amendments to section 427B.26 added specific references to "repowering" and related concepts.

acquisition cost" as the "acquired cost of *the property* including all foundations and installation cost less any excess cost adjustment." *Id.* § 427B.26(4)(*a*) (emphasis added). And the only "property" mentioned in section 427B.26 is the "[w]ind energy conversion property," which the statute defines to mean "the entire wind plant." *Id.* § 427B.26(4)(*b*). We think this means that "net acquisition cost" is the "acquired cost" of "the entire wind plant," including the cost of "all foundations and installation." *Id.* § 427B.26(4). In other words, "net acquisition cost" refers to *the original cost* of constructing the wind plant and bringing it online. *See Cost, Acquisition Cost, Black's Law Dictionary* 436 (11th ed. 2019) ("An asset's net price; the original cost of an asset."). It is the plant's historical cost. *See id.* (noting "acquisition cost" is "[a]lso termed historical cost" (emphasis omitted)). And it remains the same from the wind plant's "first assessment year"—when the plant is valued at "zero percent" of its "net acquisition cost"— through the wind plant's "seventh and succeeding assessment years," when the plant is valued at "thirty percent of the net acquisition cost." Iowa Code § 427B.26(2). It does not change because of repowerings. And it does not change because of any other part replacements. We emphasize again that words like "repowering" and "replacement" are absent from the statutory text, as are "maintenance," "modernization," "reconstruction," and "renovation."

SCW also suggests that because the statute is ambiguous, we should look beyond its text. As we recently emphasized, though, "a statute is not ambiguous merely because two litigants disagree about its meaning." *Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, ___ (Iowa 2023). "Declaring

ambiguity whenever skilled lawyers offer divergent meanings for phrases would unnecessarily launch us into ambiguity-resolving canons in most of our cases." *Id.* at ___ (quoting *Carreras v. Iowa Dep't of Transp., Motor Vehicle Div.*, 977 N.W.2d 438, 456 (Iowa 2022) (McDermott, J., concurring in part and dissenting in part)). Rather, we declare a statute ambiguous if its text supports multiple reasonable interpretations. *See State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 471–72 (Iowa 2017). To make this determination, we consider both particular words and their context: the statute as a whole. *See id.*

As explained, though, our review of section 427B.26 as a whole has revealed no substantial support for SCW's view that repowering projects trigger different valuations under different schedules. As to this issue, the statutory text does not support multiple reasonable readings. As to this issue, the statute is not ambiguous.

But SCW suggests that "[s]ilence on a particular issue constitutes statutory ambiguity" and, therefore, the statute's failure to mention "repowerings" *means* that the statute *is ambiguous about* repowerings and, therefore, we can use ambiguity-resolving principles to conclude that repowerings trigger special tax treatment. We disagree. A statute's silence about a topic doesn't necessarily create ambiguity about the statute's treatment of that topic. Rather, a statute's silence on a topic often means that the unmentioned topic is simply not covered by the statute. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) [hereinafter Scalia & Garner] ("The principle that a matter not covered is not covered is so obvious

that it seems absurd to recite it."). For example, section 427B.26 does not address the length of windmill blades. This doesn't mean that section 427B.26 is ambiguous about windmill blade length. It doesn't mean that there are competing reasonable interpretations about the tax implications of windmill blade length. It doesn't mean that—if we were to apply ambiguity-resolving canons—we could then attach particular tax consequences to various windmill blade lengths. Rather, section 427B.26's silence about windmill blade length just means that section 427B.26 has nothing to do with windmill blade length. Similarly, we think that section 427B.26's silence about repowerings—or any other kind of part replacement—just means that part replacements are not relevant under section 427B.26. They do not affect its valuation scheme.

All things considered, then, we conclude section 427B.26 is not ambiguous for purposes of this case. As a result, we need not resort to ambiguity-resolving tools. For instance, we need not consider the principle that "[s]tatutes which impose taxes are construed liberally in favor of the taxpayer and strictly against the taxing body," *Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 762 (Iowa 1981), or the potentially conflicting principle that "[t]ax exemption statutes are construed strictly, with all doubts resolved in favor of taxation," *Dial Corp. v. Iowa Dep't of Revenue & Fin.*, 634 N.W.2d 643, 646 (Iowa 2001) (quoting *Heartland Lysine, Inc. v. State of Iowa, Dep't of Revenue & Fin.*, 503 N.W.2d 587, 588 (Iowa 1993)). *See* Scalia & Garner, at 362 ("Like any other governmental intrusion on property or personal freedom,

a tax statute should be given its fair meaning, and this includes a fair interpretation of any exceptions it contains.").

We also note that although some tax statutes grant a measure of interpretive authority to the director of revenue, section 427B.26 does not. *Compare* Iowa Code § 421.17(18) (granting the director of revenue power to "issue rules as are necessary, subject to the provisions of chapter 17A, to provide for the uniform application of the exemptions provided in section 427.1 in all assessor jurisdictions in the state"), *and id.* § 427A.1(10) (directing "[t]he director of revenue [to] promulgate rules subject to chapter 17A to carry out the intent *of this section*" (emphasis added)), *with id.* § 427B.26 (containing no such authorization). *See generally Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 10–16 (Iowa 2010) (discussing principles for determining whether and to what extent the legislature has vested interpretive authority in an agency). Also, because section 427B.26 is unambiguous, we need not rely on administrative interpretations to resolve ambiguities. *See Mathis v. Iowa Utils. Bd.*, 934 N.W.2d 423, 430 (Iowa 2019) ("[L]ongstanding administrative interpretations are entitled to some weight in statutory construction." (quoting *Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 77 (Iowa 2015))). Even so, we note that some Iowa Department of Revenue guidance is contained in our record, and we have reviewed it. It does not cause us to doubt our reading of the statutory text.

A final note: As we emphasized earlier, this case is about the version of section 427B.26 that was effective from July 1, 1993 to June 30, 2021. To avoid confusion, we mention that the 2022 legislature made relevant amendments to

section 427B.26. 2022 Iowa Acts ch. 1075, §§ 1–3 (to be codified at Iowa Code § 427B.26 (2023)). Because of these amendments, section 427B.26 now expressly provides that "[m]aintaining, refurbishing, or repowering wind energy conversion property shall not cause the wind energy conversion property to receive a new assessment schedule." Iowa Code § 427B.26(3)(*b*) (2023). And the amended statute now expressly defines "[r]epowering" to mean "the removal and replacement of components of wind energy conversion property." *Id.* § 427B.26(4)(*c*).

These amendments do not alter the outcome in this case. The parties' briefs do not suggest that they should. Moreover, although some statutory amendments change a statute's meaning, others merely clarify. *See, e.g., State v. Guzman-Juarez*, 591 N.W.2d 1, 3 (Iowa 1999). We think that these amendments fall in the second category. We suspect that they were a response to recent department of revenue guidance that (as SCW emphasizes) has suggested that some repowerings could require new valuations on new schedules.[6] The 2022 amendments expressly reject that notion. They explicitly confirm what was already implied by the statute's preamendment text: repowerings don't change the valuation of wind plants. 2022 Iowa Acts ch. 1075, §§ 1–3 (to be codified at Iowa Code § 427B.26(3)(*b*), (4)(*c*) (2023)).

---

[6]*See* Memorandum from the Iowa Dep't of Revenue to Iowa Assessors (July 24, 2020), https://tax.iowa.gov/sites/default/files/2020-07/Wind%20Energy%20Special%20Valuation .Final_.pdf.

**IV. Conclusion.**

Under Iowa Code section 427B.26 (2021), "repowering" a wind plant by replacing component parts does not change the plant's valuation for property tax purposes. The district court was correct. We affirm.

**AFFIRMED.**